In the Matter of STANDARD MANUFACTURING COMPANY, INC., Petitioner, v TAX COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, January 30, 1986

*Lombardi, Reinhard, Walsh & Harrison, P. C. (Anthony J. Amodeo, Jr.,* and *Richard P. Walsh, Jr.,* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Peter J. Dooley* of counsel), for respondents.

## OPINION OF THE COURT

MAIN, J.

Petitioner, Standard Manufacturing Company, Inc. (Standard), is a New York corporation with its principal place of business located in the City of Troy, Rensselaer County, and is engaged in the manufacture, purchase and sale of outerwear clothing. Its wholly owned subsidiary, Caribbean Outerwear Corporation (Caribbean), is a Delaware corporation but has its principal place of business in Jabuyoa, Puerto Rico. Caribbean is primarily engaged in the manufacture and sale of "active-wear", designed for wear by a person while engaged in somewhat strenuous physical exercise. George H. Arakelian, John Arakelian and Dorothy King own all of the outstanding shares of the common and preferred stock of Standard, are officers of both Standard and Caribbean and constitute the board of directors of each corporation. Sixto Gonzalez serves as chief executive officer of Caribbean and, although he reports annually to its board of directors, has almost unlimited authority in the management of the corporation. During the years in issue, Caribbean sold 90% of its output to Standard. Caribbean's advertising was minimal, consisting of but two listings in local directories. Each of the corporations had its

own legal counsel and accountant. Caribbean had its own independent line of credit with a Puerto Rican bank and had no business, inventory or bank accounts in New York. A large percentage of Caribbean's profits remain undistributed in Puerto Rico in order to take advantage of the benefits of the Puerto Rican and possession tax credit (26 USC § 936).

The Audit Division of the State Department of Taxation and Finance issued notices of deficiency to Standard for the fiscal years ending July 31, 1978 and July 31, 1979 as a result of its failure to file a franchise tax report for Caribbean and to include Caribbean on its combined report. Upon Standard's filing for redetermination, a hearing was held at which George Arakelian, Standard's and Caribbean's president, testified, as did the chief executive officer of Caribbean. By decision dated May 2, 1984, respondent State Tax Commission denied the petition and sustained the notices of deficiency after finding that there were substantial intercorporate transactions between Standard and Caribbean and that the two corporations were part of the same unitary business. Standard then commenced this CPLR article 78 proceeding seeking to annul the determination.

The assessment of a franchise tax is a payment for the privilege of doing business in this State (Tax Law § 209 [1]). The payment is made on the basis of the "entire net income" as that term is defined in Tax Law § 208 (9). Under Tax Law § 211 (4), a taxpayer which owns or controls substantially all of the capital stock of another corporation may be required to submit a franchise report covering that other corporation if such a report is necessary to properly reflect the taxpayer's tax liability. Its purpose is to avoid distortion of and more realistically portray the true income of closely related businesses (*Matter of Coleco Indus. v State Tax Commn.*, 92 AD2d 1008, 1009, *affd* 59 NY2d 994). The then applicable regulations under the section provide that the Tax Commission may require a combined report if the statutory requirement of ownership or control is met, the companies are engaged in a unitary business and there are substantial intercorporate transactions (20 NYCRR 6-2.1 [eff Jan. 1, 1976]).

Standard does not here challenge the ownership/control issue, but asserts that the Tax Commission erred in finding that there was a unitary business and substantial intercorporate activity. We disagree. Caribbean sells 90% of its production to Standard, which, in turn, sells the garments to its customers. Caribbean expends little, if any, effort to sell its

products to anyone else. While Caribbean's chief executive officer appears to have a free hand in the management of the corporation, he still remains accountable to Caribbean's board of directors and officers, all of whom hold the identical positions with Standard and collectively own all of the stock of Standard. In a matter such as this, which requires the analysis of a regulation applied to a particular factual situation, the administrative determination must be respected absent irrationality *(see, Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 676, *affd* 55 NY2d 758). If there are any facts or reasonable inferences to be drawn therefrom to support the Tax Commission's determination, it must be confirmed *(Matter of Levin v Gallman,* 42 NY2d 32, 34). The undisputed facts referred to above provide ample evidence to support the Tax Commission's conclusion that Standard and Caribbean were engaged in a unitary business and had substantial intercorporate transactions. Given the centralized management, large percentage of intercorporate sales and the meager attempts to sell elsewhere, such a conclusion can hardly be deemed irrational.

Having so concluded, we turn next to the ultimate question of whether, under all of the circumstances of the intercompany relationship in this case, combined reporting fulfills the statutory purpose of avoiding distortion of and more realistically portraying true income. In answering this question, no single factor is decisive *(Matter of Coleco Indus. v State Tax Commn., supra,* p 1009). Here, in view of the substantial extent and nature of the intercorporate transactions between Standard and Caribbean, we conclude that combined reporting would, in this case, result in a more realistic portrayal of true income, thus avoiding any distortion. Both Standard's assertion that it has shown that distortion was impossible, since Standard and Caribbean had entered into an agreement with the Internal Revenue Service to adjust their prices to reflect "arm's length" transactions *(see,* 26 USC § 482), and the Tax Commission's assertion that this same agreement constitutes proof that there was in fact distortion, are flawed since there is no proof that price adjustments pursuant to the agreement were made for the years in issue. Clearly, there is sufficient evidence to support the Tax Commission's determination that a combined report should be filed, and this determination must be upheld.

Standard further contends that requiring it to file a com-

bined tax return is unconstitutional on two grounds: first, that it is preempted by the supremacy clause (US Const, art VI, cl 2), and second, that it violates the due process clause (US Const, 14th Amend, § 1). As to the supremacy issue, Standard asserts that there is Federal legislation applicable to Puerto Rico which preempts any State action that would undermine the purpose of the Federal legislation. Internal Revenue Code § 936 (26 USC § 936) provides a tax credit for taxable income received from sources outside the United States attributable to the conduct of a business within a United States possession. Standard maintains that Congress sought to induce investment in United States possessions by granting such favorable tax treatment and that New York's statute reduces this incentive; thus, the New York statute is at variance with the Federal legislation and is void. We perceive no such conflict. The power to tax is not conferred by the Federal Constitution but exists independently of it, and it has been well established that the historic police powers of the States were not to be superseded by a Federal act unless such was the clear and manifest purpose of Congress (*Ray v Atlantic Richfield Co.,* 435 US 151, 157; *Jones v Rath Packing Co.,* 430 US 519, 525; *Rice v Santa Fe Elevator Corp.,* 331 US 218, 230).

In dealing with cases involving the commerce clause as a challenge to State taxing powers, the Supreme Court has declared that a State tax is not unconstitutional per se when applied to interstate commerce and has sustained such taxes "when [they are] applied to an activity with a substantial nexus with the taxing State * * * [do] not discriminate against interstate commerce, and [are] fairly related to the services provided by the State" (*Complete Auto Tr. v Brady,* 430 US 274, 279). In a similar vein, the Supreme Court has recognized that, despite the commerce clause, a State can properly require a corporation to file a combined report when the corporation and a foreign corporation were involved in a unitary business (*see, Container Corp. v Franchise Tax Bd.,* 463 US 159). Thus, the Supreme Court has recognized that a State's power to tax can coexist with a predominantly Federal power such as the regulation of commerce. Internal Revenue Code § 936 was enacted in 1976 to continue a tax break for investments in Puerto Rico, but did so by providing a tax credit rather than the pre-1976 exclusion from income by which some companies were receiving a tax break for investment in foreign countries. While the purpose of the Federal statute is to stimulate investment in United States posses-

sions, there is no indication anywhere of any policy for preemption of State franchise taxes with respect to companies with businesses in Puerto Rico. Since Standard has failed to demonstrate that the New York statute conflicts with the Federal legislation and that preemption was a " 'clear and manifest purpose of Congress' " *(Jones v Rath Packing Co., supra,* p 525, quoting *Rice v Santa Fe Elevator Corp.,* 331 US 218, 230, *supra),* New York's power to require a combined report has not been superseded and there has been no denial of due process.

Standard further asserts that the apportionment of income to New York is unconstitutional and that the method of assessment imposed by the Department of Taxation and Finance does not accurately or properly reflect Caribbean's New York business. Both of these assertions are bottomed upon Standard's contention that Standard and Caribbean are not engaging in a unitary business. In view of our previous conclusion, that they are so engaged, no further comment on this issue is required.

Finally, Standard argues that the Department usurped a legislative function by, beginning in 1976, including income from possession corporations in the New York franchise tax base. This argument is specious. In 1976, the Federal law previously discussed changed the tax benefit from an exemption to a tax credit. Under New York law, New York net income is to be computed without deducting the amount of a tax credit permitted under Federal law (Tax Law § 208 [9] [b] [1]). Since the statute clearly provides for the inclusion of the amount of a tax credit, there was no usurpation of a legislative function.

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, with costs.