■ In the Matter of TRANSERVICE LEASE CORPORATION, as Successor to MOTORMEN HAULAGE CORPORATION, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [624 NYS2d 661] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a corporation tax assessment imposed under Tax Law article 9.

Petitioner was the parent corporation of Motormen Haulage Corporation in 1985 and 1986. During those years, Motormen performed a variety of services related to the transportation of goods to and from supermarkets, warehouses and other facilities for Waldbaum Inc. and Waldbaum's subsidiary, Charro Trucking, Inc., in accordance with a series of agreements executed in 1985 by Motormen, Waldbaum, Charro and various unions. Pursuant to the agreements, Motormen would take over the day-to-day operation of transporting goods to Waldbaum stores and provide maintenance for the vehicles used in that process. According to the former president of Motormen, the arrangement was largely on paper and intended to create a buffer between Waldbaum and the unions engaged in maintaining and operating the vehicles.

Pursuant to the agreements, Charro leased a fleet of its tractors and trailers to Motormen for one dollar. Motormen also leased other vehicles for Waldbaum's use with Waldbaum guaranteeing the lease. Motormen had no other customers and was prohibited from using the vehicles for any other purpose. Motormen hired the drivers, machinists and mechanics previously employed by Waldbaum and Charro, initially on a probationary basis, and handled union negotiations thereafter. Waldbaum set the delivery schedules and routes and provided for loading and unloading the vehicles. The drivers chose their own routes based upon seniority and Waldbaum controlled all backhaul, i.e., the use of a trailer on the return trip from its primary destination.

According to an agreed budget, Waldbaum reimbursed Motormen for all of its expenses and paid it a flat fee of $334,000 per year for its services. Waldbaum bore the risk of loss, paid for insurance running to Waldbaum's benefit and indemnified Motormen for any union pension fund withdrawal liabilities. All business records were maintained by Motormen, which filed all tax returns. Motormen obtained all necessary permits with State and Federal agencies, registered as a motor carrier with the Department of Transportation and as a carrier of goods with the Interstate Commerce Commission.

Motormen timely filed its 1985 and 1986 New York corporation franchise tax returns under Tax Law article 9-A. In 1989, petitioner sought the consent of the Department of Taxation and Finance (hereinafter the Tax Department) to merge with Motormen. Following an audit the Tax Department concluded that in 1985 and 1986 Motormen was primarily engaged in the conduct of a transportation business and as such was taxable under Tax Law §§ 183 and 184. According to the Tax Department, an outstanding tax assessment of $145,996.78 had to be paid before a merger would be permitted. Petitioner paid the assessment under protest and Motormen filed a claim for a refund, which the Tax Department disallowed. Petitioner, claiming that Motormen merely provided a personnel and equipment management service to Waldbaum and Charro, petitioned the Division of Tax Appeals for a refund. A hearing was held and the petition was denied. Petitioner took exception to the determination and respondent Tax Appeals Tribunal upheld the determination. Petitioner now seeks judicial review by this Court pursuant to Tax Law § 2016 and CPLR article 78.

Petitioner's contention that the Tribunal failed to recognize the true nature of Motormen's business activities is without

merit. Tax Law § 183 (1) (b) and § 184 (1) impose a franchise tax on transportation and transmission corporations, including corporations principally engaged in trucking. "Transportation" has been defined by this Court as " 'any real carrying about or from one place to another' " and "trucking" as "generally involving 'the process or business of carting goods on trucks' " *(Matter of RVA Trucking v New York State Tax Commn.,* 135 AD2d 938, 939). Petitioner argues that Motormen's activities were ministerial only, and that its control over the vehicles, mechanics and drivers was a sham so as only to appear to be in control. The record shows otherwise. Motormen operated a trucking business for Waldbaum's benefit. Despite the unusual level of control by Waldbaum, Motormen leased the trucks, maintained them, employed the drivers, used the trucks and drivers to carry goods from one place to another, negotiated with the unions, and obtained the Federal and State permits necessary to operate a transportation business. Motormen also maintained transportation records, filed tax returns listing transportation services as its principal business activity and claimed Federal gasoline tax credits.

In assuming these duties and performing these functions Motormen was principally engaged in the transportation business within the meaning of Tax Law §§ 183 and 184. Petitioner's heavy reliance on *Matter of McAllister Bros. v Bates* (272 App Div 511, *lv denied* 272 App Div 979) is misplaced, the facts in that case being clearly distinguishable. The Tribunal's determination is rationally based upon and supported by substantial evidence and, accordingly, must be confirmed by this Court *(see, Matter of American Tel. & Tel. Co. v State Tax Commn.,* 61 NY2d 393, 400; *Matter of Custom Shop Fifth Ave. Corp. v Tax Appeals Tribunal,* 195 AD2d 702, 704; *see also,* Tax Law § 2016; CPLR 7803 [4]).

Petitioner's argument that the Tribunal erred by failing to look beneath the surface of Motormen's contractual relationship with Waldbaum and Charro is also without merit. Although it is generally accepted that where the substance of a transaction brings it within a tax statute it will be taxable notwithstanding its form, this Court has held that the rule does not necessarily work the other way *(see, Matter of Sverdlow v Bates,* 283 App Div 487, 491). "If a transaction comes within the form which the statute has made taxable, it is no answer to say that it is indistinguishable in substance from a transaction in a different form" *(supra,* at 491). It is significant that Motormen declared itself as a transportation business on

its tax returns and registered with Federal and State agencies as a carrier of goods and motor carrier. By selecting a form which brought it within Tax Law §§ 183 and 184, Motormen "must bear the consequences" (supra, at 491; see, Matter of Ormsby Haulers v Tully, 72 AD2d 845, 846).

Mikoll, J. P., White, Casey and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.