■ In the Matter of UPSTATE FARMS COOPERATIVE, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [736 NYS2d 786] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant

to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner is a dairy farm cooperative comprised of approximately 430 small dairy farmers located in western New York. Petitioner processes, packages, sells and distributes its members' milk and milk products to retail and institutional customers (hereinafter retailers). Petitioner packages the milk and milk products in cartons or jugs which it delivers to the retailers in either plastic or metal reusable crates (also called cases) stamped with petitioner's name. The subject crates, which cost petitioner either $2 (for plastic) or $4.50 (for metal) each, are—upon delivery—left with the retailers which unpack the milk cartons and jugs from the crates at their convenience and then, in most instances, the crates are returned to petitioner upon a subsequent delivery. Petitioner charges the retailers a $2 deposit for each crate left at their retail establishment, which is fully refunded upon return of the crate; the retailers' invoices document the number of crates left, the deposits paid and the number of crates returned and the refund credits.

After an audit, as relevant to this appeal, the Department of Taxation and Finance assessed sales tax in the amount of $56,311.81 on petitioner's purchases of milk crates for the period of September 1, 1993 through August 31, 1995. Petitioner protested the sales tax assessment, claiming that its purchases of crates to deliver its milk and milk products were exempt as packaging material under Tax Law § 1115 (a) (19) or as purchases for resale under Tax Law § 1101 (b) (4). After a hearing, the Administrative Law Judge (hereinafter ALJ) granted the petition, concluding that the crates were exempt as packaging material under Tax Law § 1115 (a) (19), finding it unnecessary to decide petitioner's alternate claim to the purchases for resale exemption. The Division of Taxation filed exceptions and respondent Tax Appeals Tribunal reversed, finding that the purchases were not exempt as packaging material under Tax Law § 1115 (a) (19), but declined to address the purchase for resale exemption because neither party had filed exceptions to the ALJ's failure to address that exemption. Petitioner now appeals, contending that its purchases of milk crates were exempt both as packaging material (Tax Law § 1115 [a] [19]) and as purchases for resale (Tax Law § 1101 [b] [4]).

We undertake our analysis guided by the principles that exemptions from tax are strictly construed against the

taxpayer, who bears the burden of demonstrating entitlement to such an exemption (*see, Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49; *Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195-197). A determination of the Tribunal will be upheld unless it is shown to be erroneous, arbitrary or capricious (*see, Matter of Grace v New York State Tax Commn.*, *supra* at 195-196), and "[i]f there are any facts or reasonable inferences from the facts to sustain it, the court must confirm" (*id.* at 195).

Seeking an exemption from the general statutory provision imposing sales tax on "[t]he receipts from every retail sale of tangible personal property" (Tax Law § 1105 [a]), petitioner relied upon Tax Law § 1115 (a) (19), which exempts from sales tax receipts from sales of "[c]artons, containers, and wrapping and packaging materials and supplies, and components thereof for use and consumption by a vendor in packaging or packing tangible personal property for sale, and *actually transferred* by the vendor to the purchaser" (Tax Law § 1115 [a] [19] [emphasis supplied]; *see*, 20 NYCRR 528.20 [a] [1]). The regulations define "packaging material" as including, but not limited to, "bags, barrels, baskets, binding, bottles, boxes, cans, carboys, cartons, cellophane, coating and preservative materials, cores, crates, cylinders, drums, excelsior, glue, gummed labels, gummed tape, kegs, lumber used for blocking, pails, pallets, reels, sacks, spools, staples, strapping, string, tape, twine, wax paper and wrapping paper *actually transferred with the product* to the purchaser" (20 NYCRR 528.20 [b] [1] [emphasis supplied]; *see*, 1 NYCRR 42.2).

The parties have disputed, and the ALJ and the Tribunal differed, as to whether the crates are "actually transferred" which, by regulation, means "physically transferred to the purchaser, *for whatever disposition the purchaser wishes*" (20 NYCRR 528.20 [b] [4] [emphasis supplied]). Notably, however, "*[r]eturnable containers*, such as drums, barrels, or acid carboys, when purchased at retail by a person who does not transfer ownership of the container, *are subject to tax*. Title to the container remains in the seller when possession of the container is transferred to one who *purchases commodities contained therein and then returns the container to the seller for refilling*" (20 NYCRR 528.20 [c] [1] [emphases supplied]). In addition, "[r]acks, trays or similar devices *used to facilitate delivery* of the vendor's product if such devices are not transferred with the product to the purchaser are subject to tax" (20 NYCRR 528.20 [c] [3] [emphasis supplied]).

While there was no contract between petitioner and its retail-

ers delineating the ownership of the milk crates, the regulations, course of dealings and surrounding circumstances fully support the Tribunal's determination that these milk crates do not constitute exempt packaging materials under Tax Law § 1115 (a) (19). The central contested issue is whether petitioner "actually transferred" the crates to each retailer "for whatever disposition the purchaser wishes" (20 NYCRR 528.20 [b] [4]) or, stated differently, whether petitioner retained *ownership* of the crates and was entitled to compel their return or merely temporarily transferred *possession* of the crates as part of its delivery process.

Foremost to our analysis, petitioner charged a deposit for each crate left with a retailer, which was recorded on the invoice, and never paid income tax on any portion of the deposit money or collected sales tax on the deposit money. Petitioner kept a record of the number of crates in possession of each retailer and the number of crates each retailer returned, for which the retailer received a credit in the amount of the deposit. Evidence at the hearing established that petitioner had a high rate of return for its milk crates and that, while its policy was to not compel the return of crates from the retailer as economically unfeasible, its delivery people did from time to time request their return when supplies ran low. Thus, in practice, the retailers generally returned the crates for a refund rather than discarding them (*compare*, 20 NYCRR 528.20 [a] [1], example [1]) and, while the crates were "physically transferred" to the retailers (20 NYCRR 528.20 [b] [4]), the practice of charging a refundable deposit for the crate combined with the practice of recording crates in and crates out undermines petitioner's claim that the transfer in possession of the crates to the retailers was "for whatever disposition the [retailer] wishes" (20 NYCRR 528.20 [b] [4]).

While petitioner did not expressly reserve its ownership of the crates on the invoices, it has not demonstrated that it lacked the right to compel their return. Indeed, petitioner maintained the milk crates as depreciable assets on its balance sheets and depreciated them as assets reflecting its continuing ownership of them. In addition, the $2 deposit, although established by regulation (*see*, 1 NYCRR 42.4) and refundable by regulation (1 NYCRR 42.5 [c]), was significantly less than the $4.50 cost of the metal crates, exposing the illogic of concluding that petitioner was transferring ownership of the crates to its retailers well below cost for whatever disposition they wished (*see*, 20 NYCRR 528.20 [b] [4]). Further, unlike the milk cartons and jugs in which the milk product is actually

contained and sold ultimately to consumers, comparable to soda bottles (*see*, 20 NYCRR 528.20 [b] [4], example [1]; *see, Matter of Nehi Bottling Co. v Gallman*, 39 AD2d 256, *affd* 34 NY2d 808), charging a separate, refundable, recorded deposit for the crate itself—distinct from the carton or jug of milk—indicates that the crate is not packaging material being transferred *"with the product"* to the retail purchaser (20 NYCRR 528.20 [b] [1] [emphasis supplied]; *see*, 20 NYCRR 528.20 [c] [3]).

In concluding that petitioner's purchases of the milk crates were subject to sales tax, the Tribunal also relied upon regulations of the Department of Agriculture and Markets which require that milk crates be marked with the dealer's name (1 NYCRR 42.3) and that a $2 deposit (in most counties) be charged for each crate remaining at the delivery site, which deposit is to be held until the return of the crate to the dealer (1 NYCRR 42.5 [a]; 42.4). Petitioner's compliance with these regulations further supports the conclusion that petitioner did not transfer *ownership* of the milk crates but, rather, merely temporarily transferred *possession* of them to the retailers who were only purchasing the jugs or cartons of milk contained in the crates and then returning the containers to petitioner for its reuse and refilling as contemplated by 20 NYCRR 528.20 (c) (1) (*see*, 20 NYCRR 528.20 [b] [4], example [2]). As such, the Tribunal's determination that the reusable, returnable milk crates were "devices used to facilitate delivery of [petitioner's milk] product" (20 NYCRR 528.20 [c] [3]) and were subject to sales tax as purchases for petitioner's own use and consumption (20 NYCRR 528.20 [c] [2]) and not exempt as "packaging material" within the meaning of Tax Law § 1115 (a) (19) was neither erroneous nor arbitrary or capricious (*see, Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195-196, *supra*).

We reach this conclusion based upon the unambiguous and clear meaning of the statutory language and its implementing regulations (*see, Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475, 479; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583; *Matter of United States Life Ins. Co. in City of N.Y. v Tax Appeals Trib. of State of N.Y.*, 194 AD2d 952, *lv denied* 82 NY2d 657). Were we to inquire further, we would conclude that this interpretation and application of the statutory exemption embodied in Tax Law § 1115 (a) (19) produces a reasonable result and fulfills its manifest and underlying purpose and the legislative intent in its enactment, as the Tribunal concluded (*see, New York State Bankers Assn. v Al-*

*bright*, 38 NY2d 430, 437; *People v Ryan*, 274 NY 149, 150; *see also*, Governor's Approval Mem, Bill Jacket, L 1974, ch 581, reprinted in 1974 McKinney's Session Laws of NY, at 2100).

With regard to petitioner's alternate claim in its petition that its purchases of milk crates were exempt as purchases for resale under Tax Law § 1101 (b) (4), the ALJ determined that this claim was moot after concluding that petitioner was entitled to the "packaging material" exemption under Tax Law § 1115 (a) (19). Thus, the ALJ never rendered a decision on the purchase for resale exemption which could have been final pursuant to Tax Law § 2010 (4). Although having the authority to decide the issue or remit the case to the ALJ (*see*, 20 NYCRR 3000.17 [e] [1], [2]; *see also*, Tax Law § 2006 [7]), the Tribunal did neither, ruling only that petitioner was not entitled to the "packaging material" exemption (Tax Law § 1115 [a] [19]) and declining to consider the purchase for resale exemption (Tax Law § 1101 [b] [4]), because neither party took exception to the ALJ's ruling of that issue (*see*, 20 NYCRR 3000.17 [b]). However, the ALJ sustained petitioner's claim to the full requested exemption—albeit on alternate grounds—and, thus, upon the Division of Taxation's appeal to the Tribunal, petitioner was not realistically aggrieved by the ALJ's failure to address the alternate purchase for resale exemption. Thus, we find that since petitioner never waived or abandoned the purchase for resale issue, the Tribunal, having reversed the ALJ's determination on the packaging material exemption, should have either addressed the purchase for resale exemption itself or remitted the matter to the ALJ for further proceedings on the issue (*see*, *Matter of Riehm v Tax Appeals Trib. of State of N.Y.*, 179 AD2d 970, 972, *lv denied* 79 NY2d 759).

Cardona, P.J., Mercure, Crew III and Carpinello, JJ., concur. Adjudged that the determination is annulled, without costs, and matter remitted to respondent Tax Appeals Tribunal for further proceedings not inconsistent with this Court's decision.