In the Matter of WEST-HERR FORD, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [791 NYS2d 193]—

Rose, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

In the course of its business as an automobile dealership, petitioner rented cars from a third party and provided them as

loaner cars to its customers free of charge while repairs were being made to the customers' cars under a manufacturer's new car warranty. Following a hearing and administrative appeal, respondent Tax Appeals Tribunal held that petitioner must pay sales tax on these loaner cars. Claiming that its provision of loaner cars during warranty repairs qualifies for the "resale" exemption under Tax Law § 1105 (c) and the applicable regulations (see 20 NYCRR 526.6 [c] [1]; 527.5), petitioner commenced this proceeding to annul the Tribunal's determination.

The parties agree that the issue here is whether or not petitioner was contractually obligated to provide loaner cars to its new car customers. Inasmuch as we fully accept the Tribunal's factual findings, the issue of whether or not a contractual obligation exists presents a pure question of law (see e.g. Shann v Dunk, 84 F3d 73, 77 [2d Cir 1996]; Horn & Hardart Co. v Pillsbury Co., 888 F2d 8, 11 [2d Cir 1989]; Gupta v University of Rochester, 57 AD2d 731, 731 [1977]). Thus, while a determination by the Tribunal will be confirmed if it " 'is rationally based upon and supported by substantial evidence' " (Matter of Sherwin-Williams Co. v Tax Appeals Trib. of State of N.Y., 12 AD3d 112, 117 [2004], quoting Matter of Transervice Lease Corp. v Tax Appeals Trib. of State of N.Y., 214 AD2d 775, 777 [1995]), it will be accorded no deference when it merely resolves a question of law (see Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills, 4 NY3d 51, 58-59 [2004]; Matter of Gillette Co. v State Tax Commn., 56 AD2d 475, 478 [1977], affd 45 NY2d 846 [1978]). With this in mind, our review discloses no facts or reasonable inferences from the facts sufficient to sustain the Tribunal's determination.

In making its determination here, the Tribunal considered the legal effect of two documents: the customer's purchase agreement for a new vehicle and petitioner's "Service Replacement Policy" (hereinafter the policy). The former is an enforceable sales contract signed by the customer as buyer and petitioner as seller, providing, among other things, that petitioner will assume any additional liability specified by it in a writing given to the customer when the new vehicle is delivered. The latter is a one-page statement on petitioner's letterhead that is given to the customer upon delivery of the new vehicle and declares that petitioner will pay the cost of renting a loaner car for the customer's use. It also describes the restrictions and responsibilities accepted by the customer in making use of the loaner car. The policy, however, has a signature line only for the customer.

Citing Crabtree v Elizabeth Arden Sales Corp. (305 NY 48

[1953]), petitioner argued before the Tribunal that, although it did not sign the policy, the policy is part of an enforceable agreement that avoids the statute of frauds because it is referable to the same subject matter and transaction as the customer's fully executed purchase agreement. The Tribunal refused to apply the holding in *Crabtree* to the two documents here on the basis that, in *Crabtree,* there was no existing, complete written contract such as the purchase agreement here.

In our view, the essential holding in *Crabtree* and its progeny is that terms of an agreement that were not included in a signed writing will be enforced despite the statute of frauds where those terms can be found in an unsigned writing prepared by the party to be charged and deal with the same subject matter or transaction involved in the signed writing (*see Henry L. Fox Co. v Kaufman Org.,* 74 NY2d 136, 140-141 [1989]; *Ladenburg Thalmann & Co. v Tim's Amusements,* 275 AD2d 243, 247 [2000]; *Rupert v Rupert,* 245 AD2d 1139, 1140-1141 [1997], *appeal dismissed* 97 NY2d 661 [2001]; *Merschrod v Cornell Univ.,* 139 AD2d 802, 805 [1988]; *Gilinsky v Sarbro Realty Corp.,* 138 AD2d 823, 824 [1988]; *cf. Grimm v Marine Midland Bank,* 117 AD2d 901, 902-903 [1986]). Thus, it is not significant that the signed writing here is itself an enforceable contract, for the issue, as in *Crabtree,* is whether terms other than those in the signed writing are enforceable.

The record shows that the policy was applicable when a customer's new car was brought in for warranty repairs, it was included with other paperwork given to the customer upon delivery of the new car and the "[p]rivilege[ ]" of using a loaner car continued through the new car's warranty period. Since the policy affirmatively asserted that petitioner would rent and pay for cars for the customer's use, and gave petitioner no discretion to withhold a loaner car, we conclude that the policy dealt with the same transaction as the purchase agreement and was part of an enforceable contract.

Crew III, J.P., Peters, Spain and Lahtinen, JJ., concur. Adjudged that the determination is annulled, without costs, and matter remitted to respondent Tax Appeals Tribunal for further proceedings not inconsistent with this Court's decision.