In the Matter of XO NEW YORK, INC., Petitioner, v COM-MISSIONER OF TAXATION AND FINANCE et al., Respondents. [856 NYS2d 310]—

Kavanagh, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which denied petitioner's request for a refund of sales tax imposed under Tax Law article 28.

Petitioner is a New York public utility which provides telecommunication services to consumers nationwide. It purchases electricity from Consolidated Edison and converts it to direct current to power its telephone switch equipment which is essential to the production of its telecommunications service. In May 2003, petitioner applied to the Division of Taxation and Finance for a refund of all state sales tax it had paid on the purchase of this electricity for a 2½-year period commencing in January 2000.[1] When its application for a refund was denied, a conciliation conference was held and, subsequently, the denial was sustained. Petitioner challenged that determination by way of an administrative petition claiming that it was entitled to have its purchases of electricity held exempt from the imposition of a sales tax pursuant to Tax Law § 1115 (a) (12) and (12-a) and (c) (1). An Administrative Law Judge (hereinafter ALJ) determined that petitioner's purchases were properly subject to the sales tax and that the statutory exemptions did not apply. Petitioner appealed to respondent Tax Appeals Tribunal which adopted and affirmed the ALJ's determinations without further opinion. Petitioner commenced this CPLR article 78 proceeding in this Court seeking to annul the Tribunal's determination on the ground that it is arbitrary and capricious.

Initially, we note that the Tribunal's interpretation and administration of the Tax Law is entitled to deference (see *Matter of Fuchsberg & Fuchsberg v Commissioner of Taxation & Fin.*, 13 AD3d 831, 833 [2004]), and its findings must be upheld if rationally based and not ultimately proven to be "erroneous, arbitrary or capricious" (*Matter of Upstate Farms Coop. v Tax Appeals Trib. of State of N.Y.*, 290 AD2d 896, 898 [2002]). In addition, a taxpayer who claims to be statutorily exempt from the payment of a tax has the burden of proving that he or she is

---

1. The amount of the refund requested was $176,238.30.

entitled to the exemption (*see Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195 [1975]; *Matter of Upstate Farms Coop. v Tax Appeals Trib. of State of N.Y.*, 290 AD2d at 897-898), and, unless that burden is met, the statute authorizing the exemption will be strictly construed against the taxpayer, "although the interpretation should not be so narrow and literal as to defeat its settled purpose" (*Matter of Sumitomo Trust & Banking Co. [U.S.A.] v Commissioner of Taxation & Fin.*, 280 AD2d 706, 708 [2001] [internal quotation marks and citation omitted]).

The tax challenged by petitioner was imposed pursuant to Tax Law § 1105 (b) (1) (A), which applies to utilities and telecommunications providers. Tax Law § 1105 (b) (1) states that a sales tax shall be imposed upon "[t]he receipts from every sale, other than sales for resale, of the following: (A) gas, electricity." Petitioner, for the first time in this proceeding, argues that the electricity it purchased should not be subject to sales tax because it is, in effect, a component part of the product it sells to its customers and, as such, qualifies as a resale of the electricity which should be excluded from sales tax liability. Given that this argument was not raised either before the ALJ or the Tribunal, it is not preserved for our review and may not be raised in this proceeding (*see Matter of Karay Rest. Corp. v Tax Appeals Trib.*, 274 AD2d 854, 855 [2000], *lv denied* 96 NY2d 702 [2001]; *see also Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 16 AD3d 72, 75 [2005], *affd* 6 NY3d 104 [2005]). Petitioner's contention that this position is clearly implied by the administrative challenge to the sales tax it made in the proceedings is not supported by the record and, even if it were, that fact does not excuse its failure to directly address and advance this issue prior to taking this appeal (*see Matter of Henry v Wetzler*, 82 NY2d 859, 862 [1993], *cert denied* 511 US 1126 [1994]; *Matter of Karay Rest. Corp. v Tax Appeals Trib.*, 274 AD2d at 855-856; *Matter of Mera v Tax Appeals Trib. of State of N.Y.*, 204 AD2d 818, 821 [1994]). Moreover, even if we were to consider this argument, the fact is that petitioner did not purchase electricity "for resale as such" as is required to receive the exemption under this statute (20 NYCRR 527.2 [e]). Instead, it used the electricity to produce telecommunications services that it actually sold.

In the alternative, petitioner points to three statutory subdivisions of Tax Law § 1115 which it says apply to its purchase of electricity and exempts those transactions from the sales tax (*see* Tax Law § 1115 [a] [12], [12-a]; [c] [1]). Initially, it must be noted that two of these exemptions, Tax Law § 1115 (a) (12)

and (12-a), have no application to any tax imposed pursuant to Tax Law § 1105 (b) and, therefore, do not apply to petitioner's purchase of electricity. Specifically, both of these exemptions are contained in Tax Law § 1115 (a) which, by its terms, limits the exemptions contained therein to "retail sales imposed under subdivision (a) of [Tax Law § 1105] and the compensating use tax imposed under [Tax Law § 1110]" (Tax Law § 1115 [a]). In short, since the tax challenged by petitioner was imposed pursuant to Tax Law § 1105 (b), and not Tax Law § 1105 (a), the exemptions set forth in Tax Law § 1115 (a) (12) and (12-a) have no application to petitioner's purchase of electricity and do not serve to exempt any of these transactions from payment of the sales tax.

The intent of the Legislature to limit the application of the exemptions listed within Tax Law § 1115 (a) is further evidenced by other subdivisions of Tax Law § 1115 which specifically apply to both Tax Law § 1105 (a) and (b) (*compare* Tax Law § 1115 [a] *with* Tax Law § 1115 [c]). As such, because the Legislature's intent is "plain, clear and distinct from a literal reading of the statute," the paragraphs of Tax Law § 1115 (a) may not be used to exempt petitioner from the sales tax imposed by Tax Law § 1105 (b) (1) (A) (*Matter of American Communications Tech. v State of N.Y. Tax Appeals Trib.*, 185 AD2d 79, 82 [1993], *affd* 83 NY2d 773 [1994]).[2] Even if we were to find that these provisions do apply to petitioner's purchase of electricity, there are other compelling reasons why they would not exempt it from paying the sales tax. For example, Tax Law § 1115 (a) (12) provides an exemption for the purchase of "[m]achinery or equipment for use or consumption directly and predominantly in the production of . . . electricity." By its plain terms, this provision applies only to the purchase of machinery and equipment, and not to electricity that is used to power that equipment.

Petitioner also argues that it is entitled to an exemption under Tax Law § 1115 (a) (12-a), which provides an exemption to any purchase of "[t]angible personal property for use or consumption directly and predominantly in the receiving, initiating, amplifying, processing, transmitting, retransmitting, switching or monitoring of switching of telecommunications services for

---

**2.** Petitioner's reliance on *Matter of American Airlines, Inc.* (2007 WL 507049 [Tax Appeals Trib, DTA No. 819514, Feb. 1, 2007]) does not require a different result. The Tribunal in that matter specifically stated that it only applied the exemption from Tax Law § 1115 (a) to taxes imposed under Tax Law § 1105 (b) because the parties had stipulated that, if a given condition was met, liability must be imposed regardless of the inapplicability of the exemptions. As a result of that stipulation, the Tribunal was constrained to impose liability although it would not otherwise have been able to do so.

sale or internet access services for sale or any combination thereof." Electricity, simply stated, is not a tangible piece of property that has a material existence or physical form. As such, for reasons more fully stated below, it does not qualify as tangible personal property, and this exemption has no application to petitioner's purchases of electricity.

Petitioner's third and final claim is based on an exemption contained in the Tax Law which applies to the purchase of "electricity . . . for use or consumption directly and exclusively in the production of tangible personal property" (Tax Law § 1115 [c] [1]). To benefit from this exemption, it must be found that the telecommunications service that petitioner provides is tangible personal property. Tangible personal property is defined in the Tax Law as "[c]orporeal personal property of any nature" (Tax Law § 1101 [b] [6]), and in the regulations as "corporeal personal property of any nature having a material existence and perceptibility to the human senses" (20 NYCRR 526.8 [a]). Black's Law Dictionary defines corporeal as "[h]aving a physical, material existence," and states that "land and fixtures are corporeal property" (Black's Law Dictionary 368, 1253 [8th ed 2004]). These definitions clearly encompass something physical, as evidenced by the examples listed in 20 NYCRR 526.8, all of which are material, tangible, and corporeal objects (*see* 20 NYCRR 526.8).[3] Telecommunications, as petitioner concedes, consist of digital signals which travel over wires and are received by separate equipment, i.e., a telephone which allows a customer

---

**3.** The Tax Law does include as tangible physical property "pre-written" computer software, regardless of the means by which the software is sent to the purchaser, and newspapers and periodicals delivered to the purchaser "by means of telephony or telegraphy or other electronic media," so long as there is an identical hard copy of such newspaper (Tax Law § 1101 [b] [6]). However, these two carefully drawn additions to the definition both involve products which have a tangible, physical form. "[P]re-written" computer software was added to permit the imposition of sales tax on noncustomized, potentially mass-produced software, and the legislative history indicates that the expected medium at the time for such software was in the form of a hard disc or tape (*see* Letter of Commr of Taxation and Fin, Bill Jacket, L 1991, ch 166, at 175-176 [construing section 154 of the legislation]). Newspapers and periodicals delivered by electronic or telephonic means were added to extend the exemption given to hard copy newspapers so that the right to free speech would not depend upon the format, and it was drafted narrowly to ensure that there was a tangible paper copy for anything transmitted telephonically or electronically (*see* Mem of Assembly in Support, Bill Jacket, L 1994, ch 498, at 5; Mem of NY St Dept of Economic Dev, Bill Jacket, L 1994, ch 498, at 12; Mem of Dept of Taxation and Fin, Bill Jacket, L 1994, ch 498, at 13). Inasmuch as both of these products had a physical form of some kind, their inclusion does not expand the definition of tangible property to any type of intangible product.

to participate in a communication. No evidence has been submitted by petitioner that these signals are physical, corporeal objects which have a material existence that is perceived by the senses.

Moreover, telecommunications, as previously noted, are taxed under Tax Law § 1105 (b), and not under Tax Law § 1105 (a), which applies to transactions involving tangible personal property. Had the Legislature intended telecommunications to constitute tangible personal property, Tax Law § 1105 (b) would be redundant, ineffective, and an unnecessary addition to the Tax Law (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 144, at 292).

In that vein, the term "[t]elecommunications services" is defined in the Tax Law as "telephony or telegraphy, or telephone or telegraph service, including, but not limited to, any transmission of voice, image, data, information and paging, through the use of wire, cable, fiber-optic, laser, microwave, radio wave, satellite or similar media or any combination thereof," and also includes "services that are ancillary to the provision of telephone service (such as, but not limited to, dial tone, basic service, directory information, call forwarding, caller-identification, call-waiting and the like) and also include[s] any equipment and services provided therewith" (Tax Law § 186-e [1] [g]). To expand the definition of tangible personal property to include such intangible services is a decision which must be left to the Legislature. Until the Legislature sees fit to make such a determination, this Court is left with no choice but to conclude that the telecommunications services provided by petitioner are not tangible personal property and, as such, do not entitle petitioner to an exemption to the sales tax provisions of the Tax Law.

Finally, petitioner contends that the failure to provide it with an exemption will result in multiple taxation that should be avoided. There is nothing inherently improper in taxing petitioner's purchase of electricity and imposing a second tax on those individuals who purchase its telecommunications services (*see* 2 Hellerstein and Hellerstein, State Taxation ¶ 14.01 [3d ed]). Stated another way, simply because a purchase is made to produce or provide a product that will ultimately be sold to a consumer, does not automatically exclude or exempt that transaction from application of the sales tax (*see Celestial Food of Massapequa Corp. v New York State Tax Commn.*, 63 NY2d 1020, 1022 [1984]).

For all of the reasons set forth above, petitioner's claim to a refund of sales tax as previously paid was properly denied by the Tribunal.

Mercure, J.P., Peters, Kane and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

