■ In the Matter of GUTLOVE & SHIRVANT, INC., Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [911 NYS2d 214]—

Cardona, P.J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained the cancellation of petitioner's licenses as a cigarette stamping agent and wholesale dealer, and distributor and wholesaler of tobacco products.

---

Petitioner, a New York corporation owned and operated by Joseph Ruda, commenced this CPLR article 78 proceeding seeking to annul a determination of respondent Tax Appeals Tribunal which sustained the revocation of petitioner's licenses as a cigarette stamping agent and wholesale dealer, and a distributor and wholesaler of tobacco products. The circumstances leading up to the Tribunal's determination are as follows. In 2007, cigarette manufacturer Philip Morris informed petitioner that it would cease selling its products to petitioner unless petitioner agreed not to supply Philip Morris products "directly or indirectly" to Peace Pipe Smokeshop, which was under federal investigation at that time. Petitioner agreed to those terms; however, because Peace Pipe was a major customer, and approximately 40% of petitioner's sales to Peace Pipe were of unstamped Philip Morris products, petitioner came up with a scheme to circumvent the agreement. Specifically, petitioner arranged to sell Philip Morris products to AJ's Candy, a cigarette wholesaler/vendor located on the Seneca Reservation in western New York, which then sold the product to Peace Pipe. In addition, because Philip Morris placed various restrictions on sales of cigarettes to a single purchaser, petitioner created invoices indicating that some of the sales to AJ's Candy were made to other reservation purchasers. After the scheme was uncovered during a joint investigation by the New York State Department of Taxation and Finance and the Federal Bureau of Alcohol, Tobacco and Firearms, the Department issued petitioner a notice of proposed cancellation of its licenses, alleging that petitioner (1) committed fraud or deceit in the operation of its business by scheming to circumvent its agreement with Philip Morris, (2) provided false or inaccurate information on invoices and (3) provided false information on its CG-6 Resident Agent Cigarette Tax Reports.

When Philip Morris discovered the scheme, it refused to sell its products to petitioner. Petitioner then used another corporation it had set up, Wholly Smokes of Kentucky, to purchase unstamped Philip Morris cigarettes from A & A of Tupelo, Mississippi. Those cigarettes were then shipped to petitioner's New York warehouse. Notably, Wholly Smokes's cigarette wholesaler license indicates that it is a "non-resident" business of Kentucky, located at petitioner's New York address. Ruda is the corporation's sole shareholder and president.

In 2008, an inspection of petitioner's warehouse uncovered unstamped Philip Morris cigarettes. One of the corresponding invoices specified that the cigarettes had been shipped to Wholly Smokes at petitioner's address. Other documentation indicated

that petitioner did not pay for those unstamped cigarettes until the day after they were discovered in petitioner's warehouse. Two weeks later, the Department seized a truckload of unstamped cigarettes just before they were to be delivered to petitioner's warehouse. The accompanying documentation indicated that the product was going to Wholly Smokes, with no mention of petitioner.

The Department subsequently issued a notice of cancellation of petitioner's licenses, realleging the first three charges and, additionally, alleging that petitioner knowingly aided Wholly Smokes, which is not licensed to possess untaxed cigarettes in New York, in importing unstamped cigarettes into the state. The notice of cancellation also alleged that petitioner committed fraud and deceit in the operation of its business by failing to notify the Department that it was carrying on another business in its warehouse and failed to maintain a separate warehouse facility for the purpose of receiving and distributing the product that was invoiced to Wholly Smokes.

Petitioner contested the cancellation and sought an expedited hearing. Following the hearing, the Administrative Law Judge (hereinafter ALJ) sustained the cancellation, finding sufficient evidence to support each charge. The Tribunal thereafter affirmed the ALJ's determination, noting that any one of the six grounds would justify the notices of cancellation. We now confirm.

Initially, with regard to the Peace Pipe scheme, petitioner argues that, even if its actions breached its agreement with Philip Morris not to indirectly sell cigarettes to Peace Pipe, the Department is not empowered to cancel petitioner's licenses based upon the breach of a purely private contract. To do so, petitioner contends, would invite every party with a breach of contract claim against a regulated business to seek cancellation of the business's license.

This argument misses the point. The violation herein is grounded not on the mere breach of a contract between two private parties, but rather on the inherently deceptive nature of the particular conduct engaged in by petitioner in this case. Tax Law § 480 (3) (b) (i) provides that "[a] license may be cancelled . . . if . . . a licensee or any controlling person . . . [c]ommits fraud or deceit in his or its operations as a wholesale dealer" (*see also* 20 NYCRR 71.6; 72.3). Nothing in the statutory scheme limits this broad language to a licensee's conduct toward the Department. Rather, we agree with the Tribunal's reasonable interpretation of the statute as encompassing fraudulent or deceptive conduct engaged in by a licensee in its business deal-

ings (see *Matter of Sherwin-Williams Co. v Tax Appeals Trib. of Dept. of Taxation & Fin. of State of N.Y.*, 12 AD3d 112, 115 [2004], *lv denied* 4 NY3d 709 [2005]).

In this case, overwhelming evidence in the form of, among other things, numerous tape-recorded telephone conversations between Ruda and the operator of AJ's Candy establish that Ruda masterminded the scheme with the express intention of deceiving Philip Morris into believing that petitioner was no longer supplying unstamped cigarettes to Peace Pipe. Such a large-scale, premeditated deception directly connected to petitioner's operation as a dealer and wholesaler of unstamped cigarettes violates the plain language of the statute. Because a wholesale cigarette dealer's license and a cigarette stamping agent's license may be cancelled upon failure to comply with any provision of Tax Law article 20 or article 20-a or any regulation adopted pursuant to those articles (see Tax Law § 480 [3]; see also Tax Law § 472 [1]), this violation justifies cancellation of petitioner's licenses.

As to the two additional charges stemming from the Peace Pipe scheme, the Department alleged that petitioner provided false or inaccurate information on invoices for the sale of cigarettes (see Tax Law § 474 [4]; 20 NYCRR 75.5), and provided false information on its CG-6 Resident Agent Cigarette Tax Report with respect to sales to dealers/vendors on Indian reservations and certified that information as true (see Tax Law § 475; 20 NYCRR 75.1).[1] The Tribunal's determination sustaining these charges is supported by substantial evidence in the form of testimony by Department witnesses to the effect that the operator of AJ's Candy informed them that, in order to comply with Philip Morris's quotas and restrictions concerning the amount of unstamped cigarettes that could be sold to one purchaser, petitioner created invoices falsely showing that some of the sales actually made to AJ's Candy were made to other reservations purchasers. Tape-recorded conversations between Ruda and the operator of AJ's Candy, as well as the invoices at issue and the tax documents reflecting the false information, also supported these charges.[2]

Furthermore, the charges stemming from Wholly Smokes's involvement in procuring unstamped cigarettes for petitioner

---

**1.** Contrary to petitioner's contention, these charges are not barred by collateral estoppel (see *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455-457 [1985]).

**2.** Petitioner's argument that the ALJ erred in finding that cancellation was justified because petitioner aided and abetted Peace Pipe's illegal sales is misplaced because that finding was not affirmed by the Tribunal and is not part of the determination being challenged.

were also supported by substantial evidence. The charge that petitioner knowingly aided and abetted Wholly Smokes in the importation of unstamped cigarettes into New York (*see* Tax Law § 480 [3] [a]) was supported by the report and affidavit of a Department investigator, which indicated that she discovered unstamped Philip Morris cigarettes that were billed to Wholly Smokes and shipped to that entity at petitioner's New York warehouse. Documentary evidence established that those cigarettes were not paid for by petitioner until the following day. Additionally, the foregoing evidence that Wholly Smokes was operating its business out of petitioner's New York warehouse, together with petitioner's New York State Cigarette Agent/Wholesaler Application that did not mention that Wholly Smokes was operating out of the same building as petitioner, established a violation of regulations requiring that petitioner immediately inform the Department of any change to the information shown on the application (*see* 20 NYCRR 71.1 [f] [1]; 72.1 [c] [1]). And finally, Wholly Smokes's possession of cigarettes in petitioner's warehouse violated Tax Law § 480 (1) (d) and § 483 (a) (2), as well as 20 NYCRR 71.1 (a) (2) (i), which require wholesalers to maintain separate warehouse facilities for the purpose of receiving and distributing cigarettes and conducting their businesses.

As noted by the Tribunal, any of the charges sustained herein justifies the cancellation of petitioner's licenses (*see* Tax Law § 480 [3]; *see also* Tax Law § 472 [1]).

Peters, Rose and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.