Clark v Locey (2021 NY Slip Op 04176)





Clark v Locey


2021 NY Slip Op 04176


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

531770
[*1]Jim Clark, Appellant,
v
Michele Locey, Respondent.

Calendar Date:June 3, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Miller Mayer, LLP, Ithaca (Anthony N. Elia III of counsel), for appellant.
Bryan J. Maggs Law Offices, PLLC, Elmira (Bryan J. Maggs of counsel), for respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Blaise III, J.), entered July 17, 2020 in Chemung County, which, among other things, granted defendant's cross motion for summary judgment dismissing the compliant.
Prior to the commencement of this action, the parties were involved in an intimate, long-term relationship. Plaintiff is in the business of building residential homes and defendant is a real estate broker. Together, the parties engaged in a business venture wherein they would buy parcels of land, build residential homes thereon and sell same for a profit. In 2005, the parties purchased a lot in Florida as tenants in common for their personal use and as an investment and constructed a house thereon (hereinafter the Florida property). Plaintiff ultimately contributed approximately $103,000 to that property and defendant invested approximately $400,000. In 2009, plaintiff deeded his interest in the Florida property to defendant's living trust and plaintiff was discharged from the mortgage. In early 2012, the parties decided to sell the Florida property. Plaintiff then again deeded his interest in the Florida property to defendant's living trust upon the request of the title company.
In July 2012, the Florida property was sold at a net value of about $370,000, which defendant deposited into her bank account. In the end of 2012, defendant purchased a vacant lot in the Town of Horseheads, Chemung County (hereinafter the Horseheads property) on which the parties constructed a house. After defendant lived in the house, beginning in May 2014, she ultimately rented it to a third party in 2018. The parties ended their relationship in 2017 and agreed to divide most of their joint real and personal property, with the exception of the Horseheads property.
In March 2018, plaintiff commenced the current action asserting three claims. In the first two causes of action, plaintiff seeks a constructive trust on the Horseheads property. In the third cause of action, he seeks a money judgment based upon unjust enrichment. Defendant answered and raised several affirmative defenses. Following discovery, plaintiff moved for summary judgment, which defendant opposed. Defendant cross-moved for summary judgment, which plaintiff opposed. Supreme Court ultimately denied plaintiff's motion and granted defendant's cross motion, finding, among other things, that plaintiff failed to prove the elements of a constructive trust as a matter of law because there was no evidence that defendant made any promise upon which plaintiff relied. Plaintiff appeals.
Although the equitable claims of constructive trust and unjust enrichment are elementally related and involve overlapping proof, certain essential elements differ. "[A] constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest" (Sharp v Kosmalski, 40 NY2d 119, 121 [1976] [internal quotation [*2]marks, brackets and citations omitted]; accord Rafferty Sand & Gravel, LLC v Kalvaitis, 116 AD3d 1290, 1291 [2014]). "The elements of a constructive trust are a confidential relationship, a promise, a transfer in reliance on that promise and unjust enrichment" (Baker v Harrison, 180 AD3d 1210, 1211 [2020] [internal quotation marks and citations omitted]; see Morgan v Kilroy, 181 AD3d 1024, 1025 [2020]). As relevant here, with respect to the promise element, it may be express or implied, as determined by the circumstances (see Sharp v Kosmalski, 40 NY2d at 122; Baker v Harrison, 180 AD3d at 1211-1212). "Finally, a person . . . is unjustly enriched when retention of the benefit received would be unjust considering the circumstances of the transfer and the relationship of the parties" (Klugman v LaForest, 138 AD3d 1185, 1186 [2016] [internal quotation marks, brackets and citations omitted]; see McGrath v Hilding, 41 NY2d 625, 629-631 [1977]).
Importantly, and as relevant here, "the constructive trust doctrine serves as a fraud-rectifying remedy rather than an intent-enforcing one" (Bankers Sec. Life Ins. Socy. v Shakerdge, 49 NY2d 939, 940 [1980] [internal quotation marks and citation omitted]; see Wilcox v Wilcox, 233 AD2d 565, 566 [1996]). By contrast, an action based on unjust enrichment, which would only result in a money judgment rather than a judicially imposed lien, requires the plaintiff to establish that "(1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (He v Apple, Inc., 189 AD3d 1984, 1985 [2020] [internal quotations and citations omitted]).
We turn first to plaintiff's argument regarding Supreme Court's grant of defendant's cross motion dismissing the constructive trust causes of action. Specifically, plaintiff asserts that an implied agreement was established as evidenced by his unpaid labor in constructing a home on the Horseheads property.[FN1] We disagree. In support of her cross motion, defendant relied upon, among other things, plaintiff's deposition testimony, defendant's deposition testimony and a deed from third parties to defendant alone dated September 2012 for the Horseheads property. At his deposition, plaintiff attested that the parties bought the Horseheads property together and that he applied for any necessary building permits, although they were under defendant's name. Plaintiff further attested that there was an understanding wherein he would construct a "nice" house on the Horseheads property so he could then use it as a model home for future clients. Plaintiff averred that defendant "wrote all the checks" for that construction project. Plaintiff did, however, produce evidence and testify that he made some payments related to construction, but he also testified that defendant reimbursed him for all of those expenses. Plaintiff testified that he did not pay taxes or any [*3]other related expenses on the Horseheads property, other than electric utilities through July 2014, although that bill was under defendant's name.
Defendant averred at her deposition that, during the course of their relationship, plaintiff would build houses and defendant would get a commission for selling them. Regarding the Horseheads property, defendant testified that she purchased a vacant lot in Horseheads sometime around the end of 2012. According to defendant, she used the sale proceeds from the Florida property to finance that purchase and the ensuing construction of a house thereon, as well as about $200,000 of her own money for outstanding construction on the property. Defendant attested that plaintiff built the house located on the Horseheads property as a general contractor, not a half owner, and that there was no agreement between the parties as to the construction of same. To that end, defendant averred that the parties did not discuss whether plaintiff would receive income from that construction project. Defendant testified that she paid plaintiff for all invoices related to the construction of the house, though construction material expense receipts were under plaintiff's name because "[h]e was buddies with [the suppliers]." During construction of the house, the electric bill was under plaintiff's corporate name for tax purposes, although defendant later changed it to her name. Defendant averred that she moved into the Horseheads property around May 2014 and that plaintiff never lived in the property. As of April 2018, defendant rented the property to a third party. Defendant further testified that the parties split "everything up" in 2017 and at that time plaintiff did not ask to be put on the title of the Horseheads property or to get money from same. The foregoing evidence was "sufficient to shift the burden to plaintiff to establish the existence of a triable issue of fact" with respect to whether there was an express or implied promise upon which he relied (Augur v Augur, 90 AD3d 1111, 1112-1113 [2011]; compare Enzien v Enzien, 96 AD3d 1136, 1138 [2012]).
In opposition to defendant's cross motion, and in support of his own motion, plaintiff submitted, among other things, text messages between the parties from various dates in 2014 and 2015. Within these text messages are statements from defendant to plaintiff wherein she refers to the Horseheads property as "our house" and makes reference to plaintiff being "entitled to half." Plaintiff places great reliance on these text messages. However, they primarily occurred after plaintiff's labor was complete. Plaintiff has not offered any exhibit, or testimony, prior to these text messages — let alone prior to commencing labor — sufficient to raise a question of fact that there was a promise, either express or implied, upon which he relied when expending approximately 800 hours in labor to build a house on the Horseheads property. "Inasmuch as the constructive trust [*4]doctrine serves as a 'fraud-rectifying' remedy rather than an 'intent-enforcing' one, without more, the circumstances offered by [plaintiff] were insufficient to [raise a question of fact as to] the promissory element which is essential to the proof of such a trust" (Bankers Sec. Life Ins. Socy. v Shakerdge, 49 NY2d at 940, quoting Matter of Wells, 36 AD2d 471, 474-475 [1971], affd 29 NY2d 931 [1972]).
However, we reach a different conclusion as to the unjust enrichment cause of action and find issues of fact as to whether defendant was unjustly enriched to the extent that plaintiff's labor added to the home's fair market value. In support of his motion for summary judgment, plaintiff asserted that he worked on the Horseheads property for approximately 800 hours, largely because he believed the house would be used as a model home to attract new clients and he would live there with defendant. In her deposition testimony, defendant admitted that she was not aware of whether plaintiff was paid for his labor. Supreme Court found that this situation was akin to the prior real estate dealings between the parties. However, the prior dealings were markedly different because, in those transactions, plaintiff would build a home and his services were compensated through profit that he earned at the time of sale.[FN2] Additionally, text messages between the parties revealed that defendant repeatedly referred to the Horsehead's property as "our house," and stated, "it's half yours . . . I am not entitled to what is half yours." Thus, assuming that plaintiff can prove that he provided such labor and that he was not compensated for it, there is a question of fact as to why he provided the labor. Further, a core question of fact is also presented as to whether defendant was unjustly enriched by plaintiff's alleged provision of labor (see generally Klugman v LaForest, 138 AD3d at 1186). Thus, even assuming that defendant established prima facie entitlement to summary judgment as to this cause of action, given the questions of fact raised by plaintiff, we find that Supreme Court erred in granting summary judgment to defendant as to the unjust enrichment cause of action (see generally Minutolo v County of Broome, 130 AD3d 1202, 1204 [2015]; Roche v Claverack Coop. Ins. Co., 59 AD3d 914, 917 [2009]). In light of this determination, we need not reach plaintiff's remaining contentions.
Garry, P.J., Egan Jr., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's cross motion for summary judgment dismissing the unjust enrichment cause of action; cross motion denied to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: To the extent that plaintiff argues that an express promise to share ownership of the Florida property and the proceeds of the sale thereof — used to purchase the Horseheads property — existed, we reject this argument outright as it is belied by the record. The proof is clear that plaintiff conveyed, by way of two separate deeds, his interest in the Florida property so that defendant would have the equity for herself or for her children in the event of death.

Footnote 2: Defendant earned real estate commissions as the listing agent.