Nolte v Salisbury (2025 NY Slip Op 50749(U))

[*1]

Nolte v Salisbury

2025 NY Slip Op 50749(U)

Decided on May 12, 2025

Supreme Court, Warren County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 12, 2025
Supreme Court, Warren County

Todd Nolte, individually and as co-trustee 
 of the DONALD E. NOLTE TRUST u/a/d February 19, 1990, Plaintiff,

against
Andrea T. Salisbury, KAREN S. BOLLE, BRUCE E. NOLTE, 
 and GREGG D. NOLTE, each individually and as co-trustee of the DONALD E. NOLTE TRUST u/a/d February 19, 1990, Defendants.

Index No. EF2023-71747

Mack & Associates PLLC, Albany (Lucas G. Mihuta, of counsel), for plaintiff.
Whiteman Osterman & Hanna LLP, Albany (Richard D. Cirincione, of counsel), for defendants.

Robert J. Muller, J.

On February 19, 1990, Donald E. Nolte (hereinafter Grantor) executed a trust instrument known as the "Donald E. Nolte Trust" (hereinafter Trust). Grantor appointed his wife, Anne Nolte, as trustee (hereinafter Trustee) and simultaneously conveyed real property located at 35 Assembly Point Road in the Town of Queensbury (hereinafter Property), to her in her capacity as Trustee. The trust property includes this real property along with bank accounts, stocks, bonds, and securities. Plaintiff, Todd Nolte (hereinafter Todd), and defendants, Andrea Salisbury (hereinafter Andrea), Karen Bolle (hereinafter Karen), Bruce Nolte (hereinafter Bruce) and Gregg Nolte (hereinafter Gregg), are the five biological offspring of Grantor and Trustee. 
Grantor passed away in 2011 and his wife passed away in 2020. The Trust provided that upon Grantor's passing, the trust continued for the benefit of his wife, and upon her death, the Trust terminates [NYSCEF Doc. No. 2, ¶3(b)]. Upon the Trustee's death, the five offspring became successor co-trustees (id.at ¶7) and upon termination of the Trust, the successor co-trustees were to distribute $5,000.00 to each of the Grantor's surviving grandchildren, and the remaining principal balance, in equal shares, to the residuary beneficiaries who are the five sibling successor co-trustees. The Trust contains a spendthrift provision which states in part, "no beneficiary shall have the right to assign, transfer or encumber, or otherwise dispose of such income or corpus until the same shall have been distributed to such beneficiary by the Trustee" (id. at ¶4)
After the passing of their mother, the five siblings agreed to a valuation of the real property in the amount of $335,000.00 and further acknowledged each had a one-fifth (1/5) share, valued at $67,000.00. It is alleged that in September 2021, the siblings agreed that Bruce, Todd, and Gregg would buy out Karen and Andrea's interest totaling $134,000.00. Todd would pay $16,750.00, Bruce would pay $16,750.00 and Gregg would pay the remaining $100,500.00, in exchange for a 25%, 25% and 50% respective ownership interest.
Gregg sent a series of emails to his siblings in September 2021, informing them he had contacted an attorney who advised that a limited liability company should be formed with the respective ownership interests memorialized, after which a contract for sale would be created transferring the Property from the Trust to the limited liability company. (NYSCEF Doc. No. 70) Gregg further provided a draft of topics to be contained in a limited liability company's ownership agreement. Gregg also suggested the money be exchanged through the Trust at that time, while the brothers continued to discuss the specifics of the agreement. (id.) 
In early October 2021, plaintiff paid $16,750.00, Bruce paid $16,750.00 and Gregg paid $100,500.00 into the Anne M. Nolte Trust bank account.[FN1]
 Shortly thereafter, two separate checks were written from this account payable to Andrea and Karen, each in the amount of $67,000.00. Plaintiff alleges that despite the buyout of Andrea and Karen's interest in the Property, defendants have collectively refused to execute a trustees' deed memorializing the revised ownership structure.
After commencement of this action defendants, through counsel, provided plaintiff with a proposed deed transferring the Property from the Trust to the five siblings in equal shares as mandated by the Trust (NYSCEF Doc. No.5, ¶17). Plaintiff refused to execute the proposed deed because it did not reflect his enlarged interest in the Property. (id. at ¶18). Alternatively, plaintiff offered to sign the deed with the stipulation he would not be estopped from claiming an undivided 25% ownership in the Property.
Plaintiff's amended verified complaint alleges four causes of action: 1) declaratory judgment to quiet title, 2) breach of contract, 3) imposition of a constructive trust, and 4) unjust enrichment. 
In a pre-answer motion defendants move to dismiss these causes of action asserting: (1) dismissal is proper under CPLR 3211(a)(1) because the documentary evidence utterly refutes plaintiff's factual allegations, (2) the amended verified complaint fails to state a cause of action because the terms of the Trust itself prevent transfer of ownership prior to distribution of principal or corpus and plaintiff has failed to plead how the transfer he requests is permissible under the Trust (see CPLR 3211[a][7]), and (3) the statute of frauds requires any contract or conveyance of real property to be in writing subscribed by the party to be charged (see General Obligations Law 5-703), (4) plaintiff cannot prove unjust enrichment, and (5) plaintiff's action for a constructive trust is an inappropriate remedy.[FN2]

"[T]he standard to be applied on a motion [of this type] is both familiar and well settled — '[the Court] must afford the complaint a liberal construction, accept as true the allegations contained therein, accord the plaintiff the benefit of every favorable inference and determine only whether the facts alleged fit within any cognizable legal theory" (Rodriguez v Jacoby & Meyers, LLP, 126 AD3d 1183, 1185 [2015], lv denied 25 NY3d 112 [2015], quoting He v Realty USA, 121 AD3d 1336, 1339 [2014] [internal quotation marks and citation omitted]; see Torrance Constr., Inc. v Jaques, 127 AD3d 1261, 1263 [2015]; Snyder v Brown Chiari, LLP, 116 AD3d 1116, 1117 [2014]). 
"'[W]here evidentiary material is submitted and considered on a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), and the motion is not converted into one for summary judgment, the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate'" (U.S. Bank N.A. v Herman, 174 AD3d 831, 832, 106 N.Y.S.3d 139 [2019], quoting Rabos v R & R Bagels & Bakery, Inc., 100 AD3d 849, 851-852, 955 N.Y.S.2d 109 [2012]; see Guggenheimer v Ginzburg, 43 NY2d 268, 274-275 [1977] as cited in Lakeview Loan Servicing, LLC v Rafuna, 232 AD3d 777, 779 [2d Dept 2024]).
"A motion pursuant to CPLR 3211(a)(1) . . . may be properly granted only if the documentary evidence utterly refutes the plaintiff's factual allegations, conclusively establishing a defense as a matter of law. To qualify as documentary evidence, the evidence must be unambiguous and of undisputed authenticity'" (Koziatek v SJB Dev. Inc., 172 AD3d 1486, 1486 [3d Dept 2019], quoting Calhoun v Midrox Ins. Co., 165 AD3d 1450, 1450, [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Doller v Prescott, 167 AD3d 1298, 1299, [3d Dept 2018]). "'Materials that clearly qualify as documentary evidence include documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are essentially undeniable'" (Koziatek v SJB Dev. Inc., 172 AD3d at 1487, quoting Ganje v Yusuf, 133 AD3d 954, 956-957 [3d Dept 2015] [citations omitted]; see Midorimatsu, Inc. v Hui Fat Co., 99 AD3d 680, 682 [2d Dept 2012], lv dismissed 22 NY3d 1036 [2013]).
Plaintiff's first claim seeks to quiet title to the Property, declare plaintiff to have an undivided 25% interest as tenants in common with Bruce and Gregg, and direct defendants to execute and file a trustees' deed memorializing the foregoing ownership structure. To maintain an equitable quiet title claim, a party must allege actual or constructive possession of the property and the existence of a removable cloud on the property, which is an apparent title, such as a deed or other instrument, that is actually invalid or inoperative (Pravda v Gleeson, 221 [*2]AD3d 1372, 1372 [3d Dept 2023]). 
Here, the parties do not dispute the authenticity of the deed transferring the Property to the Trust or the Trust document. All parties further agree that upon the death of their mother the five siblings became successor co-trustees, and each are entitled to equal shares of the Property under the Trust instrument (NYSCEF Doc. No. 18, Amended Complaint ¶15-17). Plaintiff acknowledges, as a matter of title, the Property is currently owned by the five siblings as successor co-trustees but maintains as a result of the parties' agreement, he owns an undivided one-quarter interest in the Property (id. at ¶47-48). Defendants argue that the documentary evidence—the unambiguous language of the Trust instrument—conclusively refutes plaintiff's allegations. 
On motions to dismiss under CPLR §3211(a)(1), the court gives the plaintiff's factual allegations a liberal construction but will dismiss claims when the documentary evidence is unequivocal. This amended complaint fails to state a cause of action to quiet title because while it alleged a cloud on the title, the Trust instrument utterly refutes plaintiff's claim that he is entitled to a trustees' deed transferring him 25% interest in the Property. 
Despite plaintiff recognizing the Property has not been transferred from the Trust to the beneficiaries in equal shares, as required by the Trust instrument, plaintiff contends the ownership of the Property was restructured and disbursement from the Trust must now be in harmony with the new ownership percentages. However, such encumbrance prior to distribution is invalid under the spendthrift provision of the Trust which states:
No disposition, charge or encumbrance on the income or corpus of this trust, or any part thereof by any beneficiary of this trust by way of anticipation shall be valid or in any way binding upon the Trustee, and no beneficiary shall have the right to assign, transfer or encumber, or otherwise dispose of such income or corpus until the same shall be distributed to such beneficiary by the Trustee, and no income or corpus shall in any way be liable to any claim of any creditor of such beneficiary.
Nor is it allowable for the successor co-trustees to convey plaintiff a 25% interest in the Property under the applicable dispositive provision of the Trust which states:
Upon termination of this trust, the [s]successor [t]rustees shall distribute the then remaining principal balance [corpus] of said trust, together with any accumulated income . . . . . . .unto Andrea T. Salisbury, Karen S. Bolle, Bruce E. Nolte, Gregg D. Nolte and Todd E. Nolte, hereinafter referred to as residuary beneficiaries, in equal shares, share and share alike . . . ." [Trust ¶3(h)]
The allegations in the amended verified complaint, together with the unambiguous Trust instrument, conclusively establish the Property remains in the Trust, can only be distributed in equal shares to the five beneficiaries, and any encumbrance, assignment or transfer by a beneficiary is invalid until such Property has been distributed to the beneficiary. The Court is not persuaded by plaintiff's contention that the Trust terms are ancillary and almost entirely irrelevant as the "trust instrument is to be construed as written and the [testator's] intention determined solely from the unambiguous language of the instrument itself'" (Matter of Wallens, 9 NY3d 117, 122 [2007]). Nor does the Court agree with plaintiff's assertion that the fact the Property has not yet been distributed from the Trust is entirely irrelevant as such transfer would be ministerial and unnecessary (see NYSCEF Doc. No 73, pg. 7).
Plaintiff's allegations that the parties restructured the ownership of the Property and that plaintiff is currently entitled to a trustee's deed conveying him 25% ownership in the Property is belied by the Trust document. The Trust instrument itself utterly refutes plaintiff's factual allegations of entitlement to a trustee's deed for an increased ownership of the Property, and therefore conclusively establishes defendants' defense as a matter of law to plaintiff's claim for quiet title. Therefore this cause of action is dismissed (see Zeppieri v Vinson, 190 AD3d 1173, 1175 [3d Dept 2021]; Calhoun v Midrox Ins. Co., 165 AD3d 1450, 1452 [3d Dept 2018]). 
The Court's determination that defendants are entitled to a dismissal of plaintiff's claim for quiet title, however, does not automatically subvert the cause of action for breach of contract. Plaintiff's claim for breach of contract requires plaintiff to allege the existence of a contract, the performance of its obligations under the contract, the failure of the defendants to perform their obligations and damages resulting from the defendants' breach (Liberty Mut. Ins. Co. v PMI Newco, LLC, 225 AD3d 941 [3d Dept 2024]). 
Giving plaintiff the benefit of all favorable inferences which may be drawn from the pleadings, plaintiff has alleged defendants individually and as successor co-trustees entered into an agreement to transfer ownership of the Property to Todd (25%), Bruce (25%) and Gregg (50%) in exchange for each paying their pro-rata share to Andrea and Karen. Plaintiff alleges he along with Bruce and Gregg each paid their share and said payments were subsequently received by Andrea and Karen. The payments and receipt of payments are not disputed by defendants. Plaintiff asserts he performed his obligation of payment, and contends defendants breached the agreement by not conveying a trustees deed granting him 25% ownership interest in the Property to him. 
Defendants contend not only is this transfer prohibited under the Trust, but also, there can be no breach without a valid and binding contract where there was no "meeting of the minds" as to the essential terms of the agreement and, as alleged by plaintiff, the agreement is barred by the statute of frauds. 
The Court's dismissal of the quiet title action is based on plaintiff's allegations of entitlement to a trustee's deed granting him 25% ownership in the Property. This proposed transfer is prohibited by the Trust document. The Trust necessitates the Property first be transferred by trustees' deed from the Trust in equal shares to the siblings. While this determination does not automatically preclude plaintiff from alleging a claim for breach of contract, as alleged, plaintiff's claim that defendants breach occurred when they refused to convey him a trustees' deed granting him 25% ownership in the Property, again is rebutted by the terms of the Trust which prohibit such a transfer. Here, "[the court's] role is not to interpret the contract, but to determine whether [defendants] met [their] burden of proffering documentary evidence conclusively refuting [plaintiff's] allegations"(see generally Boland's Excavating & Topsoil, Inc. v Bradford Cent. Sch. Dist., 231 AD3d 1523, 1524-1525 [4th Dept 2024]). Defendants have met their burden and plaintiff's breach of contract claim is dismissed.
With the breach of contract claim dismissed herein pursuant to CPLR 3211(a)(1) and (7), it is unnecessary to consider defendants alternate grounds for relief based upon a violation of the statute of frauds. That being said, the Court observes that in New York, the statute of frauds provides that a contract for the sale of real property "is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged" (General Obligations Law § 5-703 [2]). In order to satisfy that statute, the memorandum "must designate all parties, identify and describe the subject matter and state all of [*3]the essential terms of a complete agreement" (Conway v Maher, 185 AD2d 570, 572, [1992]; see Regan v Real Source Charities, Inc., 45 AD3d 1156, 1157, [2007]; Pentony v Saxe, 2 AD3d 1076, 1076, [2003]). The memorandum is not required to be contained in one document; separate "signed and unsigned writings [can] be read together, provided that they clearly refer to the same subject matter or transaction," contain all of the essential terms of a binding contract (Crabtree v Elizabeth Arden Sales Corp., 305 NY 48, 55, [1953]; see Syman v Vanderheuval, 249 AD2d 870, 872, [1998]; Grimm v Marine Midland Bank, 117 AD2d 901, 903 [1986]; see also William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 477, [2013]), and the "unsigned writing [was] prepared by the party to be charged" (Matter of West-Herr Ford, Inc. v Tax Appeals Trib. of State of NY, 16 AD3d 727, 729[2005]). At least one document signed by the party to be charged must "establish a contractual relationship between the parties," with the unsigned documents referring on their face to the same transaction (Crabtree v Elizabeth Arden Sales Corp., 305 NY at 56; accord Grimm v Marine Midland Bank, 117 AD2d at 903; as cited in Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 1127 [3d Dept 2014]).
Plaintiff has argued that an enforceable contract can be found by piecing together the emails between the parties beginning in 2021. Initially, "[a]n e-mail sent by a party, under which the sending party's name is typed, can constitute a [signed] writing for [the] purposes of the statute of frauds" (Agosta v Fast Sys. Corp., 136 AD3d 694, 695 [2d Dept 2016] [internal quotation marks omitted]; see Ehlenfield v Kingsbury, 206 AD3d 1671, 1673 [4th Dept 2022] as cited by Preston v Nichols, 216 AD3d 1398, 1399 [4th Dept 2023]). 
Plaintiff offers four emails to support his allegation of an enforceable contract:
1) The June 24, 2021 email from Gregg to the plaintiff, with copies to Karen, Andrea and Bruce, in which he memorializes that all parties had agreed to a valuation of the property at $335,000.00. Andrea, Karen, and Bruce respond to that email and acknowledge they are in agreement. (NYSCEF Doc. No. 69) 2) The September 29, 2021 email from Gregg to Todd and Bruce, with copies to the others, setting forth the property value, the current ownership structure and the proposed buyout cost with resulting ownership interests. This email also indicates Gregg will be meeting with an attorney to get the "legal ball rolling" suggesting the formation of a limited liability company and then "create[ing] a contract for the sale of the property from the Trust to the LLC". (NYSCEF Doc. No. 70) There does not appear to be any acknowledgement or responses to this email from the parties. 3) The March 23, 2022 email from Andrea to Karen, Bruce, Gregg and Todd advising that she updated an Excel distribution spreadsheet to reflect camp ownership distributions. (NYSCEF Doc. No. 72) There does not appear to be any acknowledgement or responses to this email from the parties. 4) The January 17 and 18, 2023 emails between plaintiff and Andrea, in which Andrea explains the parties deposited the buyout money into the trust, and checks were written to Karen and Andrea from the trust account. Andrea further states, "I was under the impression that you three were on the homestretch with only a few outstanding items to be addressed for this LLC . . . " (NYSCEF Doc. No. 71)
Karen, Andrea and Bruce acknowledge and agree to Gregg's June 24, 2021 communication which establishes the value of the Property, however, this is the only [*4]documentation that Andrea, Bruce, or Karen acknowledged and arguably, agreed to be bound by. Gregg's September 29, 2021 email offered by plaintiff appears to contain some of the alleged terms of the agreement but it is not authored or acknowledged by any of the other defendants which plaintiff seeks to bind to the agreement. As such, the Court determines these emails would be insufficient to satisfy the statute of frauds (see Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 1128 [3d Dept 2014], in that the defendant did not prepare any of the unsigned documents and therefore they were not binding on him for purposes of constructing a memorandum that would satisfy the statute of frauds).
Furthermore, plaintiff's contention that, even if the agreement fails by statute of frauds analysis, the part performance exception to the statute applies because he performed his obligation of payment. "Under the part performance doctrine, 'it is the conduct of the entity seeking to enforce the agreement, and its detrimental reliance on the agreement, that makes proper the invocation of equitable principles'&commat; (McCormick v Bechtol, 68 AD3d 1376, 1379 [3d Dept 2009], lv denied 15 NY3d 701 [2010], quoting Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229, 236 [1999]; see Anostario v Vicinanzo, 59 NY2d 662, 664 [1983]). Further, "[t]he doctrine of part performance may be invoked only if plaintiff's actions can be characterized as 'unequivocally referable' to the agreement alleged" (Anostario v Vicinanzo, 59 NY2d at 664; accord McCormick v Bechtol, 68 AD3d at 1379). 
The Court finds part performance/promissory estoppel with respect to plaintiff's claim to a one-quarter ownership interest in the Property could have raised a question of fact as to whether his actions are "unequivocally referable" to the agreement had the breach of contract allegations survived this motion — but they have not.
Tunning next to plaintiff's equitable claims of unjust enrichment and constructive trust which are elementally related and involve overlapping proof but with certain essential elements that differ. "A constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest. The elements of a constructive trust are a confidential relationship, a promise, a transfer in reliance on that promise and unjust enrichment. With respect to the promise element, it may be express or implied, as determined by the circumstances. Finally, a person is unjustly enriched when retention of the benefit received would be unjust considering the circumstances of the transfer and the relationship of the parties. Importantly, the constructive trust doctrine serves as a fraud-rectifying remedy rather than an intent-enforcing one. By contrast, an action based on unjust enrichment, which would only result in a money judgment rather than a judicially imposed lien, requires the plaintiff to establish that: (1) the other party was enriched; (2) at the plaintiff's expense; and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." (Clark v Locey, 196 AD3d 794, 794 [3d Dept 2021])
Viewing plaintiff's allegations as true, he has adequately alleged a claim for unjust enrichment. Specifically, plaintiff has asserted he transferred money which was ultimately paid to Karen and Andrea in exchange for an increased ownership in the Property, which he has not received. 
In addition to the remedy of unjust enrichment, a constructive trust may be imposed if a confidential relationship exists and one party holding title to property is under an equitable duty to convey it to another (Enzien v Enzien, 96 AD3d 1136, 1136 [3d Dept 2012]). These elements, however, "are simply guidelines and are not to be applied rigidly in pursuing the goal of preventing unjust enrichment"(id. at 1137)
As to the first element, "[f]amilial relationships . . . often give rise to at least a factual issue regarding a confidential relationship" (id. at 1137-1138) Plaintiff alleges legal title to the Property is currently held by the Trust and because the successor co-trustees, who have the ability to transfer the Property, and his siblings are one and the same. Purely as a matter of pleading the Court finds plaintiff has sufficiently alleged the elements necessary to impose a constructive trust.
Having thus considered NYSCEF document Nos. 50 through73, and oral argument having been heard on May 13, 2024 and September 19, 2024 with Lucas G. Mihuta, Esq. appearing on behalf of plaintiff and Richard D. Cirincione, Esq. appearing on behalf of defendants, it is hereby 
ORDERED that defendants' motion to dismiss the first (quiet title) and second (breach of contract) causes of action is granted; and it is further
ORDERED that defendants' motion to dismiss the third (unjust enrichment) and fourth (imposition of a constructive trust) causes of action is denied; it is further
ORDERED that defendants shall serve their answer within thirty (30) days of the date of service of this Decision and Order with notice of entry thereon; and it is further
ORDERED that any relief not specifically addressed herein has nonetheless been considered and is expressly denied.
The above constitutes the Decision and Order of this Court.
The original of this Decision and Order has been filed by the Court. Counsel for defendants is directed to serve plaintiff with notice of entry. 
Dated: May 12, 2025
Lake George, New York
ROBERT J. MULLER, J.S.C.
ENTER:

Footnotes

Footnote 1: It is unclear the nexus, if any, between the Anne M. Nolte Trust bank account where funds were deposited and from which checks were written and the Donald E. Nolte Trust, where the Property is held. 

Footnote 2: Plaintiff filed a complaint on August 30, 2023 demanding judgment pursuant to RPAPL §1501(1). Defendants filed a pre-answer motion to dismiss that claim on October 20, 2023(mot. seq. #1) and shortly thereafter, plaintiff amended his complaint to include the additional causes of action for breach of contract, imposition of constructive trust, and unjust enrichment. In defendants' reply papers the second cause of action for breach of contract was addressed but not the constructive trust or unjust enrichment claims, yet defendants sought dismissal of the complaint in its entirety. As a result of this procedural history, the Court heard oral argument from the parties on September 19, 2024 and then directed them to amend and refile the motion and responsive papers. The second motion to dismiss is the subject of this decision and identified as Motion Sequence #2 in NYSCEF.