Lu v Gamba (2025 NY Slip Op 07042)

Lu v Gamba

2025 NY Slip Op 07042

Decided on December 18, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 18, 2025

534178
[*1]Wen Mei Lu et al., Respondents,
v
Wen Ying Gamba, Individually and as Executor of the Estate of Yuen Hsiang Lu, et al., Appellants.

Calendar Date:October 16, 2025

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, Fisher and McShan, JJ.

Phelan, Phelan & Danek, LLP, Albany (Timothy S. Brennan of counsel), for appellants.
Whiteman Osterman & Hanna LLP, Albany (Jon E. Crain of counsel), for respondents.

McShan, J.
Appeal from an amended judgment of the Supreme Court (James Walsh, J.), entered September 16, 2021 in Saratoga County, upon a verdict rendered in favor of plaintiffs.
The litigation that is the subject of this appeal stems from a longstanding intrafamilial dispute between certain members of the Lu family, comprised of defendant Yuen Hsiang Lu (hereinafter the father) and plaintiff Chin Chung Lin Lu (hereinafter the mother) and their seven children. Relevant to this proceeding are three of those children: defendant Wen Ying Gamba, plaintiff Wen Mei Lu (hereinafter Iris Lu) and plaintiff Li Hua Lu (hereinafter Patty Lu).[FN1] In the early 1970s, the Lu family emigrated from Taiwan to Argentina and engaged upon a family business venture that encompassed the purchase and operation of Chinese restaurants. In 1978, the Lu family emigrated to the United States and continued the family business in various locations, including stints in New Jersey and Pennsylvania, before eventually relocating to New York.
The parties' dispute centers around the customs underlying the management and ownership of the various properties and businesses that were acquired over time by the Lu family. According to plaintiffs, as a customary part of the management of the Lu family business, the properties purchased in furtherance of the business were titled in several of the children's names, including the children who are parties to this litigation. By plaintiffs' telling, this custom encompassed a promise made by the parents that, in exchange for the children's time and effort in the Lu family business, they would acquire an ownership interest in the family's assets. That custom originated when the family emigrated to Argentina and continued after the family emigrated to the United States.
Plaintiffs alleged that the father retired in 1983, and that Gamba, Patty Lu and Iris Lu took over the family business. In 1984, the three of them purchased a commercial property in the City of Saratoga Springs, Saratoga County (hereinafter the Duo property) that they converted to a restaurant space. They subsequently purchased another nearby commercial property in Saratoga Springs. The Saratoga properties were initially titled in Gamba's name and were the locations for various restaurant businesses. Sometime toward the end of 1986, Gamba left the family business to marry her husband and, in 1987, legal title for the properties was transferred from Gamba's name to Patty Lu's name. Around the same time, the mother and the father divorced, and the father moved to Taiwan. In 1988, Iris Lu and Patty Lu purchased a residential property located in the Town of Guilderland, Albany County (hereinafter the Christian Court property), placing legal title in Patty Lu's name.
Meanwhile, Gamba and her husband moved into a residential property in Suffolk County (hereinafter the Hither House property) that was owned by Gamba's mother-in-law. When Gamba's mother-in-law sought to sell the Hither House property, [*2]Gamba arranged an agreement between the Gamba family and the Lu family to facilitate a purchase of the property. Gamba's relationship with Iris Lu and Patty Lu deteriorated thereafter due to a dispute about the division of ownership equity in the Hither House property, precipitating litigation commenced by Gamba in 1995 that, in part, asserted a claim of ownership of the Saratoga properties via a constructive trust. During that litigation, title to the Saratoga properties was transferred to the father.[FN2] The parties later agreed to a settlement which, among other things, required that Gamba pay $200,000 for the Hither House property and discontinue her pursuit of an interest in the Saratoga properties. After the settlement, the Saratoga properties remained in the father's name, who resided in Taiwan, while Iris Lu and Patty Lu continued to manage the properties.
In April 2015, the father, claiming that Iris Lu had failed to send him the proceeds of the rent from the Saratoga properties, returned from Taiwan to the United States and transferred legal title of those properties and his share of the Christian Court property to Gamba for no consideration. Thereafter, plaintiffs commenced this action seeking to assert a constructive trust claim over the Saratoga properties and the Christian Court property against the father, Gamba and Chuen Lou, LLC (hereinafter collectively referred to as defendants). [FN3] [FN4] In an amended answer, defendants raised, among other things, the defense of unclean hands and asserted several counterclaims. Following a nine-day jury trial, the jury returned a verdict granting plaintiffs' constructive trust claim, apportioning all interest in the properties to plaintiffs, and denying defendants' defense of unclean hands. An amended judgment was thereafter entered imposing a constructive trust on the properties. Defendants appeal.[FN5] [FN6]
We affirm. Defendants' overarching contention is that the jury verdict is legally insufficient and against the weight of the evidence. "A verdict may be set aside as unsupported by legally sufficient evidence where there is simply no valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial. Under a sufficiency review, we undertake a basic assessment of the jury verdict and may not make a determination of insufficiency in any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon" (Streit v Katrine Apts. Assoc., Inc., 212 AD3d 957, 958 [3d Dept 2023] [internal quotation marks and citations omitted]; see Nemeth v Brenntag N. Am., 38 NY3d 336, 342 [2022]; Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). Similarly, "[a] jury verdict should not be set aside as contrary to the weight of the evidence unless the trial proof preponderated so heavily in favor of the losing party that the verdict could [*3]not have been reached on any fair interpretation of the evidence. Showing that a different verdict would not have been unreasonable is insufficient to warrant such relief, as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Fusco v Town of Colonie, 238 AD3d 1226, 1227-1228 [3d Dept 2025] [internal quotation marks and citations omitted]; see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]).
We turn first to defendants' contention that plaintiffs failed to establish, by clear and convincing evidence, the existence of a constructive trust. "A constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest" (Clark v Locey, 196 AD3d 794, 795 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "In general, though as an equitable doctrine its application to particular circumstances is susceptible of some flexibility, to establish a constructive trust there must be provided: (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment" (Morgan v Kilroy, 181 AD3d 1024, 1025 [3d Dept 2020] [internal quotation marks and citations omitted]; see Moak v Raynor, 28 AD3d 900, 902 [3d Dept 2006]). "In this flexible spirit, the promise need not be express, but may be implied based on the circumstances of the relationship and the nature of the transaction. Similarly, courts have extended the transfer element to include instances where funds, time and effort were contributed in reliance on a promise to share in some interest in property, even though no transfer actually occurred" (Baker v Harrison, 180 AD3d 1210, 1211-1212 [3d Dept 2020] [internal quotation marks and citations omitted]; see Cinquemani v Lazio, 37 AD3d 882, 882 [3d Dept 2007]).
With respect to the legal sufficiency of the proof establishing plaintiffs' claim for a constructive trust, we note that the parties do not dispute the existence of a confidential relationship (see Rowe v Kingston, 94 AD3d 852, 853-854 [2d Dept 2012]; Cinquemani v Lazio, 37 AD3d at 883). Defendants' arguments on appeal with respect to the sufficiency of proof are instead primarily focused on the assertion that any promise that may have been made with respect to ownership interests in the Lu family business was vague. However, in assessing the promise made and the equities of any given situation, the lack of any express words is of no moment, as "the whole transaction, it might be found, was instinct with an obligation imperfectly expressed" (Sharp v Kosmalski, 40 NY2d 119, 122 [1976] [internal quotation marks and citations omitted]). Plaintiffs testified that the Lu family children were told from a young age that they would be entitled to an ownership interest if they contributed to the Lu family business. In connection with that promise, [*4]Iris Lu testified that, from the time that they emigrated to Argentina and continuing through their subsequent emigration to the United States, she, Patty Lu and Gamba dedicated significant time and effort to assisting the mother and the father with the management and operation of various restaurants. Iris Lu testified that the father had retired by the time they purchased the Saratoga properties and, after Gamba left the family business around 1986, the responsibility of managing those properties fell to her and Patty Lu.
According to Iris Lu, over the course of decades, she and Patty Lu procured tenants for the Saratoga properties, assisted in promoting the restaurant businesses that occupied those premises and, importantly, paid off the mortgages for those properties. As explained by Iris Lu, the subsequent transfer of the deeds to those properties to the father, despite his lack of involvement and without any consideration, was precipitated by the 1995 litigation commenced by Gamba. Despite that transfer, Iris Lu testified that the father continued to have no involvement in managing the Lu family business after his retirement. As to the Christian Court property, which was acquired long after Gamba had left the family business, Iris Lu testified that the father had relocated to Taiwan when that property was purchased and that he only occasionally spent time there when he traveled to the United States. More importantly, the efforts to restore that property and live in it were exclusively undertaken by Iris Lu, Patty Lu and the mother.[FN7] The testimony from Iris Lu and Patty Lu also noted that, as is customary in Chinese families, Iris Lu provided the father with funds for his personal care and expenses during his retirement, but they insisted that he possessed no continuing interest in the properties.
The constructive trust doctrine provides the factfinder significant flexibility in determining whether and how to impose an equitable remedy. As much is evident in the well-established maxim that the "elements are simply guidelines, . . . and a constructive trust, as an equitable remedy, may be imposed whenever justice so demands" (Johnson v Lih, 216 AD2d 821, 823 [3d Dept 1995]; see Kissane v Cashman, 217 AD3d 932, 934 [2d Dept 2023]; Baker v Harrison, 180 AD3d at 1211; Mei Yun Chen v Mei Wan Kao, 97 AD3d 730, 730 [2d Dept 2012]). The evidence at trial was sufficient to establish a valid line of reasoning supporting a constructive trust based upon Iris Lu's and Patty Lu's efforts with respect to the Christian Court property and the Saratoga properties over several decades, the lack of any involvement with those properties by Gamba and the father over that time period and the transfer of deeds to the father, and later to Gamba, that occurred despite that fact (see Ali v Rahaman, 224 AD3d 721, 722 [2d Dept 2024]; Koumantaros v Koumantaros, 223 AD3d 887, 888 [2d Dept 2024]; Diaz v Diaz, 130 AD3d 560, 561-562 [2d Dept 2015]; Tyree v Henn, 109 AD3d 906[*5], 908 [2d Dept 2013]).
As to the weight of the evidence, competing versions of the Lu family history and business practices were presented by both sides during the lengthy trial. Defendants made every effort to direct the jury's focus on the respective ages of Patty Lu and Iris Lu at the time that the Lu family emigrated to Argentina as well as the time that the properties at issue were purchased. On that, Gamba's testimony was generally dismissive of Iris Lu's and Patty Lu's efforts in furthering the Lu family business, testifying that their contributions to the family business were minimal, as they were in school throughout much of that time period. Gamba suggested that their presence in the restaurant both in Argentina and the United States was not premised on any obligation to work. However, both Iris Lu and Patty Lu provided conflicting accounts, highlighting that, despite attending school during some of the time in question, they were still expected to contribute time and effort to the Lu family businesses. Iris Lu and Patty Lu testified that those efforts encompassed multiple responsibilities and evolved over time, beginning with their contributions in the kitchen and later on assuming responsibility over assisting in acquiring tenants and handling accounting work.
Moreover, the evidence at trial demonstrated that the last involvement that Gamba had in managing and improving the Saratoga properties ended in the late 1980s when Gamba married and relocated. Iris Lu provided testimony with respect to the transfer of mortgages and title for the properties to Patty Lu's name after Gamba had left, consistent with the Lu family business model of utilizing one family member as title holder. Although Gamba downplayed any efforts by Iris Lu and Patty Lu to maintain the properties over that time based upon her assertion that the challenging work of making the properties "turnkey" had already been accomplished, the jury heard extensive testimony on those facts and chose to reject that characterization. Further, the father's testimony regarding the date of his retirement and the extent of his involvement in the properties after the 1980s was inconsistent and the jury could freely reject it. Defendants' argument that the documentary proof was contrary to the history that plaintiffs presented seemingly ignores that the remedy at issue is one of equity and, in that respect, accounts for the absence of formal transfers of property or express promises reflecting the customs of the Lu family business (see Aubertine v Aubertine, 240 AD3d 1360, 1362 [4th Dept 2025]; Ning Xiang Liu v Al Ming Chen, 133 AD3d 644, 645 [2d Dept 2015]; Fisk v Campbell, 180 AD2d 987, 989 [3d Dept 1992]; Hornett v Leather, 145 AD2d 814, 816 [3d Dept 1988], lv denied 74 NY2d 603 [1989]; Neal v Neal, 92 AD2d 633, 633-634 [3d Dept 1983]). Ultimately, the jury was authorized to conclude that a constructive trust was "necessary to satisfy the demands of justice" (Kaprov v Stalinsky, 145 AD3d [*6]869, 872 [2d Dept 2016] [internal quotation marks and citations omitted], lv denied 29 NY3d 913 [2017]; see Oakes v Muka, 69 AD3d 1139, 1142 [3d Dept 2010], appeal dismissed 15 NY3d 867 [2010]), and, although a different verdict may not have been unreasonable, that is an insufficient basis for us to overturn the jury's determination on the record before us (see Fusco v Town of Colonie, 238 AD3d at 1227-1228).[FN8]
We reach a similar conclusion with respect to defendants' defense of unclean hands. "The unclean hands doctrine applies where the [party seeking relief] is guilty of immoral, unconscionable conduct" (Matter of Baker v Clinton County, 134 AD3d 1218, 1220 [3d Dept 2015] [internal quotation marks and citations omitted]; see Sutter v Lane, 61 AD3d 1310, 1313 [3d Dept 2009]) and "when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct" (Weiss v Mayflower Doughnut Corp., 1 NY2d 310, 316 [1956]). The defense of unclean hands "is allowed not as a protection to a defendant, but as a disability to the plaintiff" (Reiner v North Am. Newspaper Alliance, 259 NY 250, 256 [1932]; accord Farino v Farino, 88 AD2d 902, 903 [2d Dept 1982]).
Initially, the unclean hands defense raised in this case entails individualized consideration with respect to the father and Gamba. As to the father, Iris Lu testified that she contacted the father, who flew home from Taiwan, when Gamba first threatened to pursue ownership of the Saratoga properties. According to Iris Lu, Gamba reminded the father that those properties had previously been deeded to her and that she possessed documentary evidence in support, including tax returns and cancelled checks. This prompted plaintiffs and the father to formulate a plan, with the assistance of counsel, to defend against Gamba's claims by transferring the Saratoga properties to the father in furtherance of a defense that the father owned everything. Iris Lu testified that this was consistent with the Lu family's practices as the family had often placed legal title in one family member's name despite that family member not being the true owner. The properties were then transferred to the father by deeds dated October 1993, for no consideration or interest. After the transfer, Iris Lu and Patty Lu continued to operate the business with respect to those buildings as if no transfer had occurred.
There is conflicting evidence as to whether the transfer of deeds for the Saratoga properties was effectuated at the suggestion of the father, who would therefore be unharmed by the conduct (see National Distillers & Chem. Corp. v Seyopp Corp., 17 NY2d 12, 15-16 [1966]; Weiss v Mayflower Doughnut Corp., 1 NY2d at 316; Bright Stone Corp. v J & J Assoc. II, LLC, 161 AD3d 628, 628-629 [1st Dept 2018], lv dismissed 32 NY3d 1039 [2018]; Columbo v Columbo, 50 AD3d 617, 619 [2d Dept 2008]; 390 W. End Assoc. v Baron, 274 AD2d 330, 332-333 [1st Dept 2000]; Whalen [*7]v Gerzof, 206 AD2d 688, 690-691 [3d Dept 1994], lv denied 84 NY2d 809 [1994]; Higgins v Normile, 130 AD2d 828, 829 [3d Dept 1987]). Further, there was evidence that Gamba and the father were estranged during this time and that the father's impression of her up until 2015 was that she was acting out of greed. Under these circumstances, we do not believe that the unclean hands defense must be imposed as a matter of law to the father's claim of ownership (see Toobian v Golzad, 193 AD3d 784, 788-789 [2d Dept 2021], lv dismissed 37 NY3d 1174 [2022]; Ortiz v Silver Invs., 165 AD3d 1156, 1158 [2d Dept 2018]; Kopsidas v Krokos, 294 AD2d 406, 407 [2d Dept 2002]; 390 W. End Assoc. v Baron, 274 AD2d at 333; Dillon v Dean, 158 AD2d 579, 580 [2d Dept 1990]; Brown v Lockwood, 76 AD2d 721, 729 [2d Dept 1980]), and that the jury could resolve whether the transfer was consistent with the Lu family practice, irrespective of the statements made by Iris Lu and Patty Lu concerning the father's ownership (see generally Lucia v Goldman, 145 AD3d 767, 769 [2d Dept 2016]).
As to Gamba, she acknowledged that she chose not to pursue her claims over the Saratoga properties, which were initially brought in Suffolk County and subsequently transferred to Saratoga County. The assertion that Gamba was injured by accepting a lesser settlement in the litigation commenced in Suffolk County fails to acknowledge that it was her choice not to pursue the merits of her ownership claim in Saratoga. To that end, the transfer of the Saratoga properties did not place them out of her reach, as she was in no way prevented from pursuing her constructive trust claim at that time, which, based upon the allegations in her complaint, was premised on a theory that implicated promises from the father (cf. Festinger v Edrich, 32 AD3d 412, 414 [2d Dept 2006]; Moo Wei Wong v Wong, 293 AD2d 387, 387 [1st Dept 2002]). On these facts, we do not find that defendants sufficiently established that Gamba suffered an injury as a result of the transfer that would render the verdict legally insufficient (see Jiles v Archer, 116 AD3d 664, 666-667 [2d Dept 2014]; Citibank, N.A. v American Banana Co., Inc., 50 AD3d 593, 594 [1st Dept 2008]; cf. Walker v Walker, 289 AD2d 225, 226 [2d Dept 2001], lv dismissed 98 NY2d 646 [2002], lv denied 99 NY2d 503 [2002]; Langdon v Langdon, 138 AD2d 358, 358 [2d Dept 1988], lv denied 73 NY2d 702 [1988]). Accordingly, the jury was free to properly resolve whether plaintiffs' conduct was "illegal" or "inequitable" (Sparkling Waters Lakefront Assn., Inc. v Shaw, 42 AD3d 801, 804 [3d Dept 2007]; see 214 Lafayette House LLC v Akasa Holdings, LLC, 227 AD3d 75, 82 [1st Dept 2024]; Dillon v Dean, 158 AD2d at 580). To that, "[t]he maxim [of unclean hands] should never be allowed to work an injustice, nor should it be applied contrary to the settled rules of equity" and "[i]t should not be invoked if the consequence of its application will be to produce a result that . . . will be more offensive [*8]to public policy than the result would be if it were not invoked" (55 NY Jur 2d, Equity § 98).
Gamba's claim to the properties in this case is subject to the father being the rightful owner of those properties, contrary to plaintiffs' constructive trust claim. In the 1995 litigation in Suffolk County, Gamba asserted a similar constructive trust claim against the Saratoga properties; however, Gamba testified that she commenced that litigation to protect her ownership interest in the Hither House property, which was inconsistent with respect to her belief that her allegations in that lawsuit were intended to assert an ownership claim over the Saratoga properties. Her testimony acknowledged that the interest in those properties belonged to her father although she insisted that her situation differed from Iris Lu and Patty Lu because she helped build her father's business with him. In short, Gamba's testimony was that she was not trying to assert a claim of ownership contrary to her father. Ultimately, the defense of unclean hands is one of equity, and the factfinder has "discretion to do what is fair, proper, and just" (Toobian v Golzad, 193 AD3d at 788). Thus, the jury was free to reject the unclean hands defense based upon the facts of this case, and we discern no justification to determine that its verdict is against the weight of the evidence.[FN9]
Defendants next contend that Supreme Court committed reversible error when it permitted plaintiffs to read Patty Lu's deposition transcript into the record, since plaintiffs failed to adequately show that Patty Lu was unable to testify, and further erred by denying their request for a missing witness charge. We disagree. "At [a] trial . . . the deposition of any person may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had the notice required under these rules, provided the court finds . . . that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment" (CPLR 3117 [a] [3] [iii]; see Billok v Union Carbide Corp., 170 AD3d 1388, 1389 [3d Dept 2019]). Patty Lu's nurse practitioner provided a letter which stated that she had treated Patty Lu for three years and that due to Patty Lu's "serious and persistent" condition, she was unable to testify in court. That letter provided a sufficient foundation to establish Patty Lu's unavailability and, on this record, we find no abuse of discretion in permitting the use of Patty Lu's deposition testimony on account of her unavailability (see Matter of New York City Asbestos Litig., 227 AD3d 558, 559 [1st Dept 2024]; Cunningham v Baldari, 100 AD3d 584, 584-585 [2d Dept 2012], lv denied 20 NY3d 862 [2013]; Sadhwani v New York City Tr. Auth., 66 AD3d 405, 405-406 [1st Dept 2009], lv denied 14 NY3d 705 [2010]; Cutler v Konover, 81 AD2d 571, 572 [2d Dept 1981], affd 55 NY2d 891 [1982]; compare 244 Linwood One, LLC v Tio Deli Grocery Corp., 214 AD3d 617[*9], 618 [2d Dept 2023]; M.S. v County of Orange, 64 AD3d 560, 562 [2d Dept 2009]). Defendants' contention that a hearing was warranted prior to Supreme Court granting relief is unpreserved as defendant never made that request at trial (see Gates v Longden, 120 AD3d 980, 981 [4th Dept 2014]; Seligson v Russo, 16 AD3d 253, 253 [1st Dept 2005], lv denied 5 NY3d 706 [2005]; Matter of Karen BB, 216 AD2d 754, 756-757 [3d Dept 1995]). Further, we discern no abuse of discretion in declining a missing witness charge, as there was a sufficient basis for the court to determine that Patty Lu was unavailable (see People v Gonzalez, 68 NY2d 424, 428 [1986]; see also Minick v Liquid Air Corp., 240 AD2d 477, 478 [2d Dept 1997]; Byczek v City of New York Dept. of Parks, 81 AD2d 823, 824 [2d Dept 1981]; see generally Cohen v Lukacs, 272 AD2d 501, 501-502 [2d Dept 2000]).
Finally, defendants contend that Supreme Court committed reversible error in permitting plaintiffs to call a tenant from the Duo property to testify because the witness had failed to comply with a subpoena and, as a result, defendants had no opportunity to prepare for cross-examination due to the late disclosure. "Trial courts are granted broad discretion in overseeing the disclosure process, and appellate courts will not intervene absent a clear abuse of that discretion" (Hubbell, Inc. v Lazy Swan Golf & Country Club LLC, 187 AD3d 1448, 1450 [3d Dept 2020] [internal quotation marks and citations omitted]). The tenant was identified on the witness list that was provided a week prior to trial and his testimony failed to reflect that he had deliberately avoided the subpoena. On these facts, we discern no abuse of discretion in declining the drastic remedy of preclusion (see Seale v Seale, 149 AD3d 1164, 1167 [3d Dept 2017]). Defendants' remaining contentions, to the extent not explicitly addressed, have been considered and found unavailing.
Aarons, J.P., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the amended judgment is affirmed, with costs.

Footnotes

Footnote 1: The other children, who are not parties to the action, are Wen Lung Lu, Wen Lan Lu, Li Chin Lu and Wen Fu Lu.

Footnote 2: A 50% share of the Christian Court property was deeded to the father in 1998.

Footnote 3: In 2017, Gamba transferred the deed to the Saratoga properties to Chuen Lou, LLC, of which she is the sole member.

Footnote 4: Wen Fu Lu, who was originally named as a defendant, was stipulated out of the action shortly before the trial started.

Footnote 5: We exercise our discretion, in the interest of justice, to overlook the inaccurate description of the judgment in defendants' notice of appeal and treat it as valid (see CPLR5520 [c]).

Footnote 6: During the pendency of the appeal, the father passed away, Gamba was named the executor of the father's estate and Supreme Court amended the caption of this action. Further, after the trial, defendants moved to set aside the verdict, and Supreme Court has since denied that motion. This Court granted defendants' motion for a preliminary injunction and continued the appointment of a receiver over the properties that are subject to the litigation pending resolution of this appeal.

Footnote 7: Iris Lu testified that the transfer of interest in the Christian Court property to the father was specifically done for tax purposes, as he remained the title holder for the Saratoga properties at the time. The mortgage on the property remained in Patty Lu's name after the transfer.

Footnote 8: As to defendants' arguments directed at apportionment, there was testimony reflecting that the familial arrangement encompassed Patty Lu and Iris Lu providing for the father after his retirement and Iris Lu testified that they had continuously done so until the dispute between them arose in 2015. Accordingly, although the Lu family funds were used to purchase the properties and seemingly maintained some ownership interest at that time, the equitable nature of the constructive trust permitted the jury to account for the aforementioned arrangement in apportioning ownership as of the time of the litigation. Similarly with respect to Gamba, although the testimony established that she had played a substantial role in acquiring the Saratoga properties and making them suitable to operate as restaurants, the fact that she was not involved in any further efforts with the properties after 1987 was sufficient justification for the jury to decline apportioning her any interest. Accordingly, we decline to disturb the jury's findings in that respect.

Footnote 9: As to defendants' contention that judicial estoppel should bar plaintiffs from obtaining relief, we do not discern anywhere in the record where such a claim was raised before Supreme Court, which would render it unpreserved (see McHale v Anthony, 70 AD3d 466, 467 [1st Dept 2010]). To the extent that the argument could be viewed as preserved by virtue of the arguments raised with respect to unclean hands (see generally Matter of Indeck-Corinth L.P. v Assessor for the Town of Corinth, 204 AD3d 1145, 1147 n [3d Dept 2022]), we find it without merit, as the doctrine only applies when the position of the party is endorsed through a final determination (see SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d 1457, 1467-1468 [3d Dept 2025]). The settlement in this case does not meet that threshold (see Matter of R.W. Burrows Grantor Family Trust [Lengvarsky], 222 AD3d 1389, 1391 [4th Dept 2023]; Matter of Costantino, 67 AD3d 1412, 1413 [4th Dept 2009]; Manhattan Ave. Dev. Corp. v Meit, 224 AD2d 191, 192 [1st Dept 1996], lv denied 88 NY2d 803 [1996]).